No. 25-___

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

IN RE LENOVO GROUP LIMITED,
*Petitioner*

---

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas,
Case No. 2:24-cv-00239
Chief Judge J. Rodney Gilstrap

---

## PETITION FOR A WRIT OF MANDAMUS

---

JACOB SCHROEDER
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
3300 HILLVIEW AVENUE
PALO ALTO, CA 94304-1203
(650) 849-6600

LI ZHANG
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, LLP
TWO SEAPORT LANE
BOSTON, MA 02210-2001
(617) 646-1600

*Counsel for Petitioner,*
    *Lenovo Group Limited*

December 18, 2024

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**<u>CERTIFICATE OF INTEREST</u>**

**Case Number:** _____

**Short Case Caption:** In re Lenovo Group Limited

**Filing Party/Entity:** Lenovo Group Limited

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date:  December 18, 2024          Signature:   /s/ Jacob A. Schroeder

Name:    Jacob A. Schroeder

i

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☒ None/Not Applicable | ☐ None/Not Applicable |
| Lenovo Group Limited | | Legend Holdings Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| David Michael Hoffman<br>Fish & Richardson P.C. | Erin P Gibson<br>DLA Piper LLP US | Aaron P Pirouznia<br>Fish & Richardson P.C. |
| Ahimsa Endelea Hodari<br>DLA Piper LLP US | Claire Schuster<br>DLA Piper LLP US | Dominic E Massa<br>Wilmer Cutler Pickering<br>Hale & Dorr LLP |
| Helena D Kiepura<br>DLA Piper LLP US | Jason H Liss<br>Wilmer Cutler Pickering<br>Hale & Dorr LLP | Jeffrey Allen Shneidman<br>Fish & Richardson P.C. |
| Joseph J Mueller<br>Wilmer Cutler Pickering<br>Hale & Dorr LLP | Louis W Tompros<br>Wilmer Cutler Pickering<br>Hale & Dorr LLP | Melissa Richards Smith<br>Gillam & Smith, LLP |
| Salvatore P Tamburo<br>DLA Piper LLP US | Sarah R. Frazier<br>Wilmer Cutler Pickering<br>Hale & Dorr LLP | Sharchun Dennis Wang<br>Wilmer Cutler Pickering<br>Hale and Dorr LLP |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒    Yes (file separate notice; see below)    ☐    No    ☐    N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒     None/Not Applicable          ☐     Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |

# TABLE OF CONTENTS

RELIEF SOUGHT .................................................................................... 1

ISSUE PRESENTED ............................................................................... 2

FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED .............. 5

REASONS FOR ISSUING THE WRIT ...................................................... 8

I.    The Writ Is Proper Because It Raises Broad, Fundamental, and
      Recurring Legal Questions. ........................................................... 9

      A.    The "stream of commerce" theory of personal jurisdiction
            presents basic, unsettled legal questions concerning the nature
            of a foreign act that would purposefully avail a defendant of
            jurisdiction in a domestic forum. ....................................... 10

            1.    The Supreme Court's splintered "stream of commerce"
                  decisions: *Asahi* and *J. McIntyre Machinery* ........................... 10

            2.    This Court's "stream of commerce" decisions:
                  Abstention from joining the debate between the *Asahi*
                  opinions. ................................................................. 12

            3.    The inconsistent application of the "stream of commerce"
                  theory among district courts ....................................... 14

            4.    Inconsistent application of the "stream of commerce"
                  theory within the Eastern District of Texas. ................ 18

      B.    The inconsistent application of the "stream of commerce"
            theory of personal jurisdiction to foreign companies that play
            no role in making, using, selling, offering for sale, or importing
            the accused products presents a basic, undecided legal question
            that should be resolved to thwart forum shopping in the wake of
            *TC Heartland* ................................................................... 21

II.   LGL Has a Clear and Undisputable Right to the Writ Because It Has
      Not Purposefully Availed Itself of the Eastern District of Texas or the
      United States generally. ................................................................ 24

A.    The district court's decision crediting conclusory, immaterial allegations over undisputed and material factual evidence was procedurally improper. .........................................................................24

B.    LGL did not purposefully avail itself of the Eastern District of Texas (under a "stream of commerce" theory) or the United States (under Rule 4(k)(2)). .................................................................27

    1.    The district court's decision that the "stream of commerce" theory supplies the Eastern District of Texas with personal jurisdiction over LGL is indisputably wrong.........................................................................27

    2.    The district court's decision that Rule 4(k)(2) supplies the Eastern District of Texas personal jurisdiction over LGL is indisputably wrong. ......................................................30

CONCLUSION ................................................................................................32

# TABLE OF AUTHORITIES

## Cases

*3G Licensing, S.A. v. Lenovo Grp. Ltd.*,
  No. 17-84-LPS, 2019 WL 3974539 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019) 3, 14, 15, 29

*Abelesz v. OTP Bank*,
  692 F.3d 638 (7th Cir. 2012) ................................................................8

*ACQIS LLC v. Lenovo Grp. Ltd.*,
  572 F. Supp. 3d 291 (W.D. Tex. 2021) ..........................................3, 17

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
  689 F.3d 1358 (Fed. Cir. 2012) ........................................... 13, 14, 29

*AlexSam, Inc. v. Aetna, Inc.*,
  119 F.4th 27 (Fed. Cir. 2024) ..............................................................25

*Asahi Metal Indus. Co. v. Super. Ct. of Cal.*,
  480 U.S. 102 (1987)......................................................................9, 10

*AX Wireless LLC v. Lenovo Grp. Ltd.*,
  No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023) .....................................................3, 17

*B/E Aerospace, Inc. v. Zodiac Aerospace*,
  No. 2:16-cv-1417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018), *report and recommendation adopted*, No. 2:16-cv-1417-JRG-RSP Dkt. No. 208 (E.D. Tex. Jan. 28, 2019)..............................................22

*Baker Laser Tech., LLC v. Seiko Epson Corp.*,
  No. 2:24-cv-924-JRG (E.D. Tex.) ......................................................4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994) .................................................. passim

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................................5

*Capella Photonics, Inc. v. Infinera Corp.*,
No. 2:20-cv-00077-JRG, 2021 WL 518478 (E.D. Tex. Feb. 10, 2021)...... 19, 20

*Celgard, LLC v. SK Innovation Co.*,
792 F.3d 1373 (Fed. Cir. 2015) ............................................................24

*Cellport Sys., Inc. v. Harman Int'l Indus. Inc.*,
No. 4:22-cv-808-SDJ, 2024 WL 1337338 (E.D. Tex. Mar. 28, 2024) .............22

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004)................................................................................8

*Colida v. LG Elecs., Inc.*,
77 F. App'x 523 (Fed. Cir. 2003) ............................................... 14, 29

*CommWorks Sols., LLC v. ASUSTek Comput. Inc.*,
No. 2:24-cv-931-JRG (E.D. Tex.) ..........................................................4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)................................................................................5

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ...............................................................24

*Douglass v. Nippon Yusen Kabushiki Kaisha*,
46 F.4th 226 (5th Cir. 2022) (en banc) ...............................................30

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ......................................................25

*Freescale Semiconductor, Inc. v. Amtran Tech. Co.*,
No. A-12-CV-644-LY, 2014 WL 1603665 (W.D. Tex. Mar. 19, 2014)............30

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
No. 2:16-cv-1425-JRG-RSP, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018) ........5

*Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*,
No. 2:16-cv-01425-JRG-RSP, 2018 WL 279091 (E.D. Tex. Jan. 3, 2018),
*objection overruled by* 2018 WL 837711 (E.D. Tex. Feb. 13, 2018) ...............20

*Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*,
No. 6:21-cv-00122-ADA, 2021 WL 6205789 (W.D. Tex. Dec. 29, 2021) .......10

*In re Lenovo Grp. Ltd.*,
   No. 24-106 (Fed. Cir.) ..........................................................18

*In re Meraki Integrated Cir. (Shenzhen) Tech., Ltd.*,
   No. 2021-180, 2021 WL 5292271 (Fed. Cir. Nov. 15, 2021) ............18

*In re Norplant Contraceptive Prods. Liab. Litig.*,
   899 F. Supp. 315 (E.D. Tex. 1995).....................................................25

*In re Regents of the Univ. of Cal.*,
   964 F.2d 1128 (Fed. Cir. 1992) ...............................................8

*In re Roman Cath. Diocese of Albany*,
   745 F.3d 30 (2d Cir. 2014) ......................................................8

*In re Stingray IP Sols., LLC*,
   56 F.4th 1379 (Fed. Cir. 2023) ...............................................9

*In re Volkswagen Grp. of Am., Inc.*,
   28 F.4th 1203 (Fed. Cir. 2022) ...............................................9

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011)...............................................................12

*Johnston v. Multidata Sys. Int'l Corp.*,
   523 F.3d 602 (5th Cir. 2008) .................................................25

*Maxell, Ltd. v. Lenovo Grp. Ltd.*,
   No. 6:21-cv-01169-ADA, Dkt. No. 146 (W.D. Tex. Feb. 6, 2023) ..................10

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*,
   890 F.3d 995 (Fed. Cir. 2018) ...............................................31

*Orange Elec. Co. v. Autel Intelligent Tech. Corp.*,
   No. 2:21-cv-240-JRG, 2022 WL 4368160 (E.D. Tex. Sept. 21, 2022)..............22

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
   253 F.3d 865 (5th Cir. 2001) ...................................... 25, 29

*Papasan v. Allain*,
   478 U.S. 265 (1986)...............................................................25

*Polar Electro Oy v. Suunto Oy*,
   829 F.3d 1343 (Fed. Cir. 2016) ...........................................................13

*Roche v. Evaporated Milk Ass'n*,
   319 U.S. 21 (1943).................................................................................8

*Sportscastr Inc. v. Sportradar Grp. AG*,
   No. 2:23-cv-472-JRG, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024).............22

*Synthes (U.S.A.) v. G.M. Dos. Reis Jr. Ind. Com de Equip. Medico*,
   563 F.3d 1285 (Fed. Cir. 2009) ..........................................................31

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   581 U.S. 258 (2017).................................................................................3

*Theta IP, LLC v. Motorola Mobility LLC*,
   No. 22C3441, 2024 WL 1283706 (N.D. Ill. Mar. 25, 2024)............. 3, 15, 16, 29

*Travelers Indem. Co. v. Calvert Fire Ins. Co.*,
   798 F.2d 826 (5th Cir. 1986), *modified*, 836 F.2d 850 (5th Cir. 1988)..............25

*Truesight Commc'ns LLC v. Lenovo Grp. Ltd.*,
   No. 2:24-cv-31-JRG, Dkt. No. 56 (E.D. Tex. Dec. 13, 2024)........................2, 3

*United States v. Lapi*,
   458 F.3d 555 (7th Cir. 2006) ................................................................8

*Universal Connectivity Techs. Inc. v. Lenovo Grp. Ltd.*,
   No. 2:23-cv-449-JRG, 2024 WL 4519760 (E.D. Tex. Oct. 17, 2024)...... 1, 3, 18

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
   848 F.3d 1346 (Fed. Cir. 2017) ..........................................................25

## Statutes

28 U.S.C. § 1400(b) .................................................................... 4, 8, 21

28 U.S.C. § 1404(a) ......................................................................4, 18

28 U.S.C. § 1651(a) ...........................................................................8

## Rules

Fed. R. Civ. P. 4(k)(2)........................................................................ 30, 31

Other Authorities

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3933.1 (3d ed. 2023).........................................................9

## RELIEF SOUGHT

Lenovo Group Limited (LGL) filed a motion to dismiss for lack of personal jurisdiction. The district court denied the motion, ruling that LGL (a holding company) purposefully availed itself of the Eastern District of Texas. Though the undisputed facts establish that LGL is not registered to do business in the United States, has no assets in the United States, makes no products, offers no products for sale, sells no products, and imports no products into the United States, the district court credited conclusory allegations over this evidence and held that LGL "chose to conduct business in Texas" and "place[s] the accused products in the stream of commerce." Appx10. The district court's application of the "stream of commerce" theory of personal jurisdiction is more expansive than any endorsed by the Supreme Court in *Asahi* and creates an end-run around the Supreme Court's *TC Heartland* decision. The opinion challenged in this petition is nearly identical to one issued in *Universal Connectivity Technologies Inc. v. Lenovo Group Limited*, No. 2:23-cv-449-JRG, 2024 WL 4519760 (E.D. Tex. Oct. 17, 2024).[1] And last week, the Eastern District of Texas, citing its prior decisions here and in *Universal Connectivity* (and others), denied LGL's motion to dismiss for lack of personal jurisdiction, stating it "declines to revisit such analysis where, as here, nothing new or additional has been

---

[1] LGL has petitioned for a writ of mandamus there, which has been docketed in this Court as No. 25-111. LGL's petition here is substantially similar to that petition. LGL is filing this petition to preserve its challenge in this case.

presented." *Truesight Commc'ns LLC v. Lenovo Grp. Ltd.*, No. 2:24-cv-31-JRG, Dkt. No. 56, at 4 (E.D. Tex. Dec. 13, 2024).

LGL seeks an order (1) clarifying that the "stream of commerce" theory of personal jurisdiction cannot stretch to cover defendants who place no products into any stream of commerce, (2) vacating the district court's denial of LGL's motion, and (3) instructing the district court to dismiss the action.

## ISSUE PRESENTED

This petition presents the issue of whether a district court may exert personal jurisdiction over a foreign holding company under the "stream of commerce" theory of personal jurisdiction simply because its indirect domestic subsidiaries purchase products, import them into the United States, and sell them here.

To support its decision, the district court credited general, conclusory allegations of the plaintiff over material, undisputed facts contained in a sworn declaration submitted by LGL. But the law does not credit conclusory allegations of the plaintiff over undisputed, evidence-supported facts presented by the defendant. And the district court's expansive view of "stream of commerce" jurisdiction led the court to conclude that LGL—a Hong Kong-based holding company that plays no role in the accused products other than being an indirect shareholder of the domestic entities that do—purposefully availed itself of the Eastern District of Texas. The growing "stream of commerce" precedent in the

2

Eastern District of Texas stretches "stream of commerce" jurisdiction far broader than any articulation of it in the Supreme Court's splintered *Asahi* decision.

There is a conflict between the district courts on this issue. For example, the District of Delaware held that LGL "could not be subject to personal jurisdiction based on the stream of commerce theory."[2] The Northern District of Illinois also found that "the stream of commerce theory does not allow this Court to exercise jurisdiction over LGL."[3] Yet, the Eastern and Western Districts of Texas have come to a different conclusion applying what should be the same law.[4]

Plaintiffs have caught on to the lack of clarity in the law and are using it for forum shopping following *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 581 U.S. 258 (2017). LGL has identified at least 123 patent infringement cases that have been filed, in 2024 alone, in the Eastern District of Texas alleging a "stream of

[2] *3G Licensing, S.A. v. Lenovo Grp. Ltd.*, No. 17-84-LPS, 2019 WL 3974539, at *6 (D. Del. Aug. 22, 2019), *report and recommendation adopted*, 2019 WL 7635823 (D. Del. Sept. 19, 2019).
[3] *Theta IP, LLC v. Motorola Mobility LLC*, No. 22C3441, 2024 WL 1283706, at *6 (N.D. Ill. Mar. 25, 2024).
[4] *Truesight*, No. 2:24-cv-31-JRG, Dkt. No. 56 (E.D. Tex. Dec. 13, 2024); *Universal Connectivity Techs.*, 2024 WL 4519760; *AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023); *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291 (W.D. Tex. 2021).

commerce" theory of personal jurisdiction against foreign defendants.[5]  *See, e.g.,*

*CommWorks Sols., LLC v. ASUSTek Comput. Inc.*, No. 2:24-cv-931-JRG (E.D.

Tex.); *Baker Laser Tech., LLC v. Seiko Epson Corp.*, No. 2:24-cv-924-JRG (E.D.

Tex.).  LGL, specifically, has been a defendant in nine of those cases.  For those

complaints against LGL, though they assert personal jurisdiction over LGL based

on its involvement in an alleged "stream of commerce," seven of these complaints

failed to name any of LGL's US-based subsidiaries (those entities who actually sell,

offer for sale, or import the accused products) as defendants.  Had these entities been

named as a party, 28 U.S.C. § 1400(b) would hold venue improper in Texas.

Even within the Eastern District of Texas, there is a conflict between how the

court applies "stream of commerce" jurisdiction.  When defending its exercise of

personal jurisdiction over a foreign defendant, the Eastern District of Texas applies

the "stream of commerce" theory broadly on motions to dismiss.  Yet, when

determining whether another domestic venue would have personal jurisdiction over

a defendant (in the context of a motion to transfer under § 1404(a)), it has applied

---

[5] Based on a December 17, 2024, Docket Navigator search of complaints filed in the Eastern District of Texas since January 1, 2024 with the search string: ("under the law of" /10 (china or japan or singapore or "hong kong" or korea or taiwan or germany or netherlands or france or "united kingdom" or italy or sweden or finland or denmark) and "stream of commerce").

the theory narrowly—refusing to transfer cases to other courts on the basis that the transferee courts lack personal jurisdiction over similarly situated defendants.[6]

LGL seeks interlocutory review and asks that the Court resolve the growing conflict in the "stream of commerce" theory of personal jurisdiction for companies, like LGL, that place no product in the stream—playing no role in the creation of the accused product, its insertion into the stream of commerce, or its passage therethrough. So long as this conflict remains, companies such as LGL are prevented from "structur[ing] their primary conduct with some minimum assurance as to whether that conduct will and will not render them liable to suit." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

## FACTS NECESSARY TO UNDERSTAND THE ISSUE PRESENTED

Eireog Innovations Limited ("Eireog") sued LGL in the Eastern District of Texas, accusing certain Lenovo-branded products of infringing the claims of patents Eireog purchased.

LGL is a holding company. Appx42 at ¶ 3; Appx 50 n.1. It is incorporated and has its principal place of business in Hong Kong. Appx42 at ¶ 2. LGL has no bank accounts, properties, or any other assets in the United States, has no employees

---

[6] *See, e.g.*, *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-cv-1425-JRG-RSP, 2018 WL 837711 (E.D. Tex. Feb. 13, 2018).

in the United States, and is not authorized, registered, or licensed to do business anywhere in the United States.  Appx43 at ¶ 4.

As a holding company, LGL does not place anything into the stream of commerce.  LGL does not make products at all, including products under the Lenovo brands.  Appx42 at ¶ 3; Appx 50 n.1.  Nor does it sell, offer for sale, export, import, or otherwise distribute Lenovo products anywhere—not in the United States generally and not in Texas specifically.  Appx42–43 at ¶¶ 3–7; Appx 50 n.1.  LGL does not engage in sales, advertising, or marketing efforts targeting the United States, or sell or offer to sell any Lenovo-branded products on the Lenovo.com website.  Appx43 at ¶ 5.  LGL does not perform research and development for Lenovo-branded products.  Appx44 at ¶ 10.

Lenovo-branded products are sold in the United States by non-party Lenovo (United States) Inc. ("Lenovo US") and Lenovo Global Technology (United States) Inc. ("Lenovo Global Tech").  Appx43 at ¶¶ 6–7.  Both are Delaware corporations with a principal place of business in North Carolina.  *Id.*  Lenovo US and Lenovo Global Tech buy products from non-party Lenovo PC HK and Lenovo Global Technology HK, then import them into the United States for sale.  *Id.*

LGL, Lenovo US, and Lenovo Global Tech are separate business entities. Even though Lenovo US and Lenovo Global Tech are indirect subsidiaries of LGL, there are no common officers or directors between LGL on the one hand and Lenovo

US and Lenovo Global Tech on the other. Appx44–45 at ¶ 12. LGL files separate tax returns from Lenovo US and Lenovo Global Tech. Appx45 at ¶ 13. LGL has no distribution, sales, or marketing agreements with Lenovo US, Lenovo Global Tech, or any other U.S. affiliate with respect to Lenovo-branded products. Appx44 at ¶ 8. Moreover, LGL is not involved in the daily business activities and decisions of Lenovo US or Lenovo Global Tech relating to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded products in the United States. *Id.*; Appx 50 n.1.

In sum, LGL is a holding company. It does not control or direct the creation of any product or the placement of any product into the stream of commerce. As a holding company, LGL simply holds investments in companies that place products into the stream of commerce. Far from purposefully availing itself of Texas or the United States, LGL has purposefully remained outside of the United States—LGL is not authorized, registered, or licensed to do business in the United States, and it has no assets in the United States. Appx43 at ¶ 4. Yet, the district court held LGL purposefully availed itself of the Eastern District of Texas under the "stream of commerce" theory based on (1) acts performed by LGL's domestic subsidiaries, including Lenovo US and Lenovo Global Tech; and (2) Eireog's allegations that LGL acted in concert with them—even though the court did not pierce the corporate veil between these separate corporate entities. Appx5–11. This case is headed

towards trial in the Eastern District of Texas, as if Lenovo US and Lenovo Global Tech were named as parties, even though if Lenovo US and Lenovo Global Tech were parties to this case, venue would be improper under 28 U.S.C. § 1400(b).

## REASONS FOR ISSUING THE WRIT

The Federal Circuit has broad jurisdiction and discretion to issue writs of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a), to correct a "clear abuse of discretion or usurpation of judicial power." *In re Regents of the Univ. of Cal.*, 964 F.2d 1128, 1130 (Fed. Cir. 1992). Mandamus typically requires the petitioner to show that (1) he has "no other adequate means to attain the relief he desires," (2) he has a "clear and indisputable" right to the writ, and (3) the writ is "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations omitted).

Despite the demanding requirements for mandamus relief, courts of appeals have granted writs of mandamus to correct the district courts' erroneous personal jurisdiction rulings. *See, e.g.*, *In re Roman Cath. Diocese of Albany*, 745 F.3d 30 (2d Cir. 2014); *Abelesz v. OTP Bank*, 692 F.3d 638 (7th Cir. 2012). This use of mandamus comports with its "traditional use . . . to confine an inferior court to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943); *United States v. Lapi*, 458 F.3d 555, 560–61 (7th Cir. 2006); 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3933.1

(3d ed. 2023). Indeed, the Supreme Court's landmark decision on the "stream of commerce" theory of personal jurisdiction arose via a writ of mandamus from state court. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 107–08 (1987).

Moreover, mandamus may be used "in narrow circumstances where doing so is important to 'proper judicial administration.'" *In re Stingray IP Sols., LLC*, 56 F.4th 1379, 1382 (Fed. Cir. 2023) (citations omitted). Such circumstances include where an appellate court corrects a district court's answers to "basic, undecided" legal questions concerning judicial administration, especially where a district court's decisions are in conflict. *Id.* (citations omitted). Under the "administration of justice" standard, a petitioner is not required to satisfy the *Cheney* requirements. *Id.* This Court has granted mandamus under this standard on issues concerning lack of personal jurisdiction or improper venue. *Id.* at 1383–84; *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022).

## I.    The Writ Is Proper Because It Raises Broad, Fundamental, and Recurring Legal Questions.

Whether a defendant in a patent suit has been properly sued in a particular forum is a fundamental issue in patent law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). This issue has been raised—and addressed in the context of venue—in repeated mandamus petitions filed with this Court and in the seminal case of *TC Heartland*. Indeed, prior decisions have

found that venue is not proper in the Western District of Texas for Lenovo US.[7]

Stymied by these rulings, plaintiffs have developed a new tactic for forum shopping:

ignore the domestic subsidiaries who actually make, sell, or import the accused

products and instead sue foreign parent companies using threadbare allegations of

"stream of commerce" jurisdiction to permit the choice of their preferred forum.

**A.    The "stream of commerce" theory of personal jurisdiction presents basic, unsettled legal questions concerning the nature of a foreign act that would purposefully avail a defendant of jurisdiction in a domestic forum.**

The Supreme Court's "stream-of-commerce" theory of personal jurisdiction

is a complex and unsettled area of law, as first demonstrated in *Asahi*.

**1.    The Supreme Court's splintered "stream of commerce" decisions: *Asahi* and *J. McIntyre Machinery***

Asahi was a Japanese manufacturer of an inner tube valve assembly that was

alleged to be both defective and a cause of a motorcycle crash in California.  *Asahi*,

480 U.S. at 105–06.  At issue was whether Asahi purposefully availed itself of

California by manufacturing the valve assembly in Japan and having an awareness

that products sold in California incorporated its valve assembly.  *Id.*

---

[7] *Gesture Tech. Partners, LLC v. Lenovo Grp. Ltd.*, No. 6:21-cv-00122-ADA, 2021 WL 6205789 (W.D. Tex. Dec. 29, 2021) (granting Lenovo US's motion to dismiss for improper venue); *Maxell, Ltd. v. Lenovo Grp. Ltd.*, No. 6:21-cv-01169-ADA, Dkt. No. 146 (W.D. Tex. Feb. 6, 2023).

Four Justices, led by Justice O'Connor, applied a narrow "stream-of-commerce" theory, holding that the mere "placement of a product into the stream of commerce" was not enough to establish jurisdiction, as jurisdiction "must come about by *an action of the defendant purposefully directed toward the forum State*." *Id.* at 112 (emphasis in original). These Justices would have held California's exercise of jurisdiction over Asahi violates due process, noting:

> Asahi does not do business in California. It has no office, agents, employees, or property in California. It does not advertise or otherwise solicit business in California. It did not create, control, or employ the distribution system that brought its valves to California. There is no evidence that Asahi designed its product in anticipation of sales in California.

*Id.* at 112–13 (internal citation omitted). Another four Justices, however, applied the "stream-of-commerce" theory more broadly, as articulated in Justice Brennan's concurrence, finding that personal jurisdiction could be appropriate if it was foreseeable to the defendant that a product it sold would reach the forum state. *Id.* at 117. These Justices would have found California's exercise of jurisdiction over Asahi proper given the foreseeability that a product manufactured and sold by Asahi would end up in California. *Id.* at 121. With neither approach gaining a majority, *Asahi* did not create binding precedent. Ultimately, the Court held that California's exercise of jurisdiction over Asahi would be "unreasonable and unfair." *Id.* at 116.

The Supreme Court then revisited the "stream-of-commerce" theory in *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). There, a plurality of Justices adopted Justice O'Connor's narrower approach in *Asahi*, concluding that jurisdiction depends on whether the defendant specifically targeted the forum state, not merely on the "foreseeability" that products it sold might end up there. *Id.* at 882 ("The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."). Applying this principle, the plurality found no personal jurisdiction over a British defendant in New Jersey. Like *Asahi*, however, *McIntyre* did not set a binding precedent.

> **2.    This Court's "stream of commerce" decisions: Abstention from joining the debate between the *Asahi* opinions.**

This Court has addressed the stream of commerce theory of personal jurisdiction dozens of times. In *Beverly Hills Fan*, the Court applied the "stream of commerce" theory to establish personal jurisdiction in Virginia over a Chinese manufacturer who produced goods in China and purposefully shipped the goods to Virginia through an established distribution channel. 21 F.3d at 1566. The Court held that personal jurisdiction was appropriate because the manufacturer, acting "in consort" with the distributor, placed the products into the stream of commerce, knowing their likely destination. *Id.* Rather than pick which version of the "stream

of commerce" theory recited in *Asahi* should apply, this Court affirmed the exercise of personal jurisdiction because it would meet either version. *See, e.g.*, *id.* ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the required jurisdictional showing."). This Court has taken a consistent approach in other cases—essentially applying both versions and determining that the result would be the same under either articulation of the theory. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012). This Court has not issued a decision in a case in which the facts fall between the two theories and thus has not been required to decide which version of the theory should apply.

Thus, as in *Beverly Hills Fan*, this Court has affirmed the exercise of personal jurisdiction over foreign defendants that have manufactured or shipped their products to United States venues through a U.S.-based distributor. *See, e.g.*, *Beverly Hills Fan*, 21 F.3d at 1565–66 ("No more [than purposefully shipping the accused fan into Virginia through an established distribution channel] is usually required to establish specific jurisdiction."); *Polar Electro Oy v. Suunto Oy*, 829 F.3d 1343, 1351 (Fed. Cir. 2016).

Conversely, the Court has consistently found personal jurisdiction absent where defendants played no role in making, shipping, or distributing the accused products that reached the forum through the stream of commerce. *See, e.g.*, *AFTG-*

*TG*, 689 F.3d at 1361 (noting the district court found the plaintiff "merely speculated that the defendants placed accused devices into the stream of commerce"); *Colida v. LG Elecs., Inc.*, 77 F. App'x 523, 524 (Fed. Cir. 2003) (finding New Jersey lacks personal jurisdiction over a Korean parent company because that company "does not ship" any accused products to customers in that state, even though its U.S. subsidiary had a place of business in New Jersey).

> **3.    The inconsistent application of the "stream of commerce" theory among district courts.**

The application of the "stream of commerce" theory of personal jurisdiction in the district courts, however, has been inconsistent on nearly identical facts. Given that personal jurisdiction over an alleged infringer under a "stream of commerce" theory is a matter of Federal Circuit law, one would not expect to see such conflict and confusion among the district courts. *Beverly Hills Fan*, 21 F.3d at 1564–65 ("The creation of a uniform body of Federal Circuit law in this area would clearly promote judicial efficiency, would be consistent with our mandate, and would not create undue conflict and confusion at the district court level.").

Confronted with the same defendant—LGL—and similar jurisdiction-related evidence, different district courts have come to opposite conclusions. For example, in *3G Licensing*, the plaintiff alleged that "LGL manufactures and distributes the accused smartphone products with the intent that the products be sold in the United States." 2019 WL 3974539, at *4. To support that allegation, the plaintiff provided

14

excerpts from an LGL annual report (like the one Eireog provided to the district court in this case) which contained language the Delaware district court found to be "ambiguous" as to whether LGL was one of the entities that were taking actions together to target the U.S. market. *Id.* at *5. In response, LGL submitted a declaration (like the one LGL submitted to the district court in this case) that explained LGL's activities and relationship with its subsidiaries. Specifically, the declaration stated that LGL "does not import or ship any products into the United States, nor does [it] manufacture, sell, or offer for sale any products in the United States." *Id.* at 6. In light of the overall record, the Delaware district court found that the evidence left "no room for ambiguity" to the conclusion that "Lenovo Group is a holding company that does not produce goods or services itself." *Id.* Accordingly, the Delaware district court found that LGL "does not intend to (nor, in fact, does it) place the accused products into the United States (and Delaware) markets. Thus, Lenovo Group could not be subject to personal jurisdiction based on the stream of commerce theory." *Id.*

The Northern District of Illinois likewise held that it lacked personal jurisdiction over LGL under the "stream of commerce" theory. In *Theta IP*, the plaintiff relied on the "close relationship that LGL's various subsidiaries have with each other . . . to suggest that LGL must control the supply chain." 2024 WL 1283706, at *6. The Illinois district court, however, found that "the fact that LGL's

subsidiaries work with each other does not speak to their relationship with LGL or LGL's role in manufacturing, selling, or marketing the Accused Products, or any other products for that matter." *Id.* In addition, the plaintiff there also based its assertion that LGL had control over the business decisions of its subsidiaries on purported overlapping leadership and LGL's involvement in a contract between its subsidiaries. *Id.* The district court rejected the plaintiff's attempt to blur the lines between different business entities, finding that the overlap of executives, even if it exists, "does not establish LGL's control" over the sales by its subsidiaries, and that LGL was merely performing "standard administrative service" for its subsidiaries. *Id.* Thus, the Illinois district court concluded that "the stream of commerce theory does not allow [it] to exercise jurisdiction over LGL," because the plaintiff failed to provide sufficient evidence to establish personal jurisdiction "under either test" of *Asahi*. *Id.*

However, the Eastern and Western Districts of Texas have recently reached the opposite conclusion. They found that personal jurisdiction was appropriate under the "stream of commerce" theory in similar situations where the Delaware and Illinois district courts found that personal jurisdiction could not lie. For example, in *ACQIS*, the Western District of Texas accepted the plaintiff's allegation that "LGL acts in consort with other defendants in placing the Accused Products in the stream of commerce" but failed to credit clear evidence, including a sworn declaration, that

LGL is a holding company that conducts no business activity in Texas or elsewhere in the United States. 572 F. Supp. 3d at 305. The *ACQIS* plaintiff, like the *3G Licensing* plaintiff did with the ambiguous language in the LGL annual report, pointed to a website which "insinuates" that there was no distinction between LGL and its subsidiaries, and that the "Lenovo Group" operated as a single company. *Id.* The *ACQIS* plaintiff also, like the *Theta IP* plaintiff, relied on an agreement between LGL's subsidiaries to suggest that LGL, through the purported control over its subsidiaries, was involved in the manufacture, sale, and distribution of products in the United States. *Id.* While both the Delaware and the Illinois district courts dismissed these showings as insufficient to establish personal jurisdiction, the Western District of Texas concluded it could exercise personal jurisdiction over LGL on the basis that "LGL acts in consort with other defendants under a stream of commerce theory." *Id.*

And, in *AX Wireless*, the Eastern District of Texas attributed to LGL the acts of LGL's non-party domestic subsidiaries to support the exercise of jurisdiction under a "stream of commerce" theory. 2023 WL 7105701, at *3–5. LGL filed a mandamus petition in that case. *In re Lenovo Grp. Ltd.*, No. 24-106, Dkt. No. 2

(Fed. Cir. Dec. 1, 2023).[8]  The Eastern District of Texas reached a similar conclusion in *Universal Connectivity*, 2024 WL 4519760, at *2-4.

### 4.    Inconsistent application of the "stream of commerce" theory within the Eastern District of Texas.

Even within the Eastern District of Texas, there is a conflict between how the court applies "stream of commerce" on motions to dismiss and how it applies the theory on motions to transfer.  District courts can only transfer cases to other courts where the case "might have been brought" originally.  28 U.S.C. § 1404(a).  Thus, in considering transfer motions, courts must determine whether the transferee forum would have personal jurisdiction over the defendants.  While the Eastern District of Texas applies the "stream of commerce" theory broadly when denying motions to dismiss (meaning the cases remain in Texas), it applies the theory narrowly when considering whether the transferee forum would have personal jurisdiction in transfer motions (meaning the cases also remain in Texas).[9]

---

[8] During the 109-day pendency of that petition, LGL settled its dispute with AX Wireless, mooting the issue for purposes of that case.  *See In re Lenovo Grp.*, No. 24-106, Dkt. No. 17 (Fed. Cir. June 4, 2024).

[9] Judge Hughes observed the "incongruous" application of personal jurisdiction law in *In re Meraki Integrated Circuit (Shenzhen) Technology, Ltd.*, No. 2021-180, 2021 WL 5292271, at *2 (Fed. Cir. Nov. 15, 2021).  There, the Western District of Texas "found personal jurisdiction appropriate in Texas under a stream-of-commerce approach," on the basis that the defendant "has entered into business with customers with 'expansive and nationwide product distribution networks' for goods incorporating [the defendant's] accused products."  *Id.*  The district court then "inexplicably change[d] course to find otherwise and deny transfer based on the

This conflict is evident in *Capella Photonics, Inc. v. Infinera Corp.*, No. 2:20-cv-00077-JRG, 2021 WL 518478 (E.D. Tex. Feb. 10, 2021). There, the plaintiff sued Infinera and four of its subsidiaries, and the defendants sought to transfer the case to the Northern District of California under § 1404(a). *Id.* at *1. Infinera was headquartered in Sunnyvale, California, and its subsidiaries, including their executives, all operated from the same Sunnyvale office space. *Id.* at *3. The accused products had been sold or offered for sale in the Northern District of California. *Id.* Even the plaintiff's complaint alleged that each defendant "has committed acts of infringement throughout the United States." *Id.*

The Eastern District of Texas found that the Northern District of California did not have personal jurisdiction over the defendants and declined to transfer the case there. *Id.* at *1. The Texas court found that the "facts raised by Defendants establish, at most, that Infinera may be subject to personal jurisdiction in the Northern District of California." *Id.* at *5. As to the subsidiaries, the court found that "[w]ithout more, Infinera's contacts with California cannot create personal jurisdiction over its subsidiaries," because "imputing Infinera's contacts to the

---

threshold question" that the transferee court in California would not have personal jurisdiction. *Id.* Judge Hughes commented in his concurrence that "this is not a situation where jurisdiction might be proper in Texas, but not in California," and that "the district court's own stated basis for jurisdiction over [the defendant] would apply equally to both districts (or be lacking in both districts)." *Id.*

Subsidiary Defendants or assert[ing] some sort of joint enterprise theory . . . is tantamount to piercing the corporate veil," which the defendants fail to do. *Id.* The court also noted that one of the subsidiaries was "a holding company that 'does not provide any products or services.'" *Id.* (internal citation omitted). Thus, in the court's view, the defendants' facts failed to "clearly establish[] which entities have contacts with California." *Id.*

The conflict in applying the personal jurisdiction law can also be observed in *Fundamental Innovation Systems International LLC v. LG Electronics, Inc.*, No. 2:16-cv-01425-JRG-RSP, 2018 WL 279091 (E.D. Tex. Jan. 3, 2018), *objection overruled by* 2018 WL 837711 (E.D. Tex. Feb. 13, 2018). In that case, the plaintiff sued several LG entities, who then moved to transfer the case to New Jersey. 2018 WL 279091, at *1. The magistrate judge in the Eastern District of Texas denied the transfer motion on the basis that the defendants failed to show that the New Jersey district court would have personal jurisdiction over one of the defendants, LG Alabama. *Id.* LG Alabama conducted business in New Jersey, had officers with offices in New Jersey, and employed four individuals in New Jersey who serviced and repaired LG products. 2018 WL 837711, at *3. The plaintiff also alleged that LG Alabama makes, uses, sells, offers for sale, and imports into the United States the accused products. *Fundamental Innovation Sys. Int'l LLC v. LG Elecs., Inc.*, No. 2:16-cv-01425-JRG-RSP (E.D. Tex.) Dkt. No. 33 ¶ 22.

The magistrate judge explained that the fact that shared officers (with offices in New Jersey) between LG Alabama and its corporate parent was not enough to establish personal jurisdiction in New Jersey, because "each corporation must be assessed separately, absent disregard for corporate separateness." 2018 WL 279091, at *2. The magistrate judge also found that the allegations that the "LG corporate parent" sold accused products through its website and through authorized retailers and distributors did not "support the conclusion that LG Alabama has any role in the sale of the accused products through LG's website." *Id.* at *3. The district judge in overruling objections to the order, found that facts raised by LG Alabama failed to "suggest any sort of stream of commerce-type theory that might support the conclusion that LG Alabama is subject to specific jurisdiction in New Jersey." 2018 WL 837711, at *4.

> **B.** **The inconsistent application of the "stream of commerce" theory of personal jurisdiction to foreign companies that play no role in making, using, selling, offering for sale, or importing the accused products presents a basic, undecided legal question that should be resolved to thwart forum shopping in the wake of *TC Heartland*.**

Taking advantage of the conflict both among and within district courts, plaintiffs have devised a new tactic for forum shopping, one that allows them to avoid the patent venue statute, 28 U.S.C. § 1400(b). Realizing venue is improper in Texas over the domestic companies who make, sell, or distribute the accused products, these plaintiffs ignore those companies and instead go after their foreign

parent companies, knowing that the Eastern District of Texas extends personal jurisdiction over foreign holding companies based on threadbare "stream of commerce" allegations.  Indeed, LGL has identified 34 motions to dismiss filed by out-of-state company defendants against the plaintiffs who invoked the "stream of commerce" theory in the Eastern District of Texas in the last ten years, and the district court denied 30 of them outright and permitted jurisdictional discovery in two cases.[10]  *See, e.g.*, *Sportscastr Inc. v. Sportradar Grp. AG*, No. 2:23-cv-472-JRG, 2024 WL 4219252 (E.D. Tex. Sept. 17, 2024).   Only two defendants successfully had their cases dismissed.  *Cellport Sys., Inc. v. Harman Int'l Indus. Inc.*, No. 4:22-cv-808-SDJ, 2024 WL 1337338 (E.D. Tex. Mar. 28, 2024); *B/E Aerospace, Inc. v. Zodiac Aerospace*, No. 2:16-cv-1417-JRG-RSP, 2018 WL 7140299 (E.D. Tex. Nov. 30, 2018), *report and recommendation adopted*, No. 2:16-cv-1417-JRG-RSP Dkt. No. 208 (E.D. Tex. Jan. 28, 2019).  In comparison, foreign defendants have fared much better in overcoming the "stream of commerce" allegations in other district courts, such as in Delaware.

This divergence has created a significant incentive for forum shopping.  An increasing number of foreign companies are being dragged into the courtrooms in the Eastern District of Texas for actions performed by their domestic subsidiaries

---

[10] Based on a December 17, 2024, Docket Navigator search of motions to dismiss for lack of personal jurisdiction involving "stream of commerce" decided by the Eastern District of Texas since January 1, 2015.

who presumably cannot be sued there.  LGL has identified at least 277 cases in 2024 alone that were filed in the Eastern District of Texas against foreign company defendants, and the plaintiffs relied on "stream of commerce" as their bases for personal jurisdiction in nearly half of them.[11]  Unless addressed conclusively by this Court, this trend will likely continue.  In the case of LGL, the precedent from the Eastern District of Texas is beginning to snowball.  *See* Appx9–10.  Indeed, applying the same "stream of commerce" theory, the Eastern District of Texas also denied LGL's motion to dismiss for lack of personal jurisdiction in a nearly-identical opinion in *Universal Connectivity Technologies Inc. v. Lenovo Group Limited*, No. 2:23-cv-449-JRG (E.D. Tex.).

The complex and unsettled status of the "stream of commerce" theory of personal jurisdiction, as well as the inconsistent application of the theory between different districts—and even within the same district—presents a "basic, undecided" legal question concerning judicial administration, one on which LGL respectfully requests this Court to provide some much-needed clarity.

---

[11] Based on a December 17, 2024, Docket Navigator search of complaints filed in the Eastern District of Texas since January 1, 2024 with the search string: ("under the law of" /10 (china or japan or singapore or "hong kong" or korea or taiwan or germany or netherlands or france or "united kingdom" or italy or sweden or finland or denmark)).

II.    **LGL Has a Clear and Undisputable Right to the Writ Because It Has Not Purposefully Availed Itself of the Eastern District of Texas or the United States generally.**

As determined by the courts in Delaware and Illinois, LGL is a holding company that does not place products into any stream.  It does not make, sell, or otherwise bring products to the United States and, thus, has not availed itself of the United States markets under the "stream of commerce" theory of personal jurisdiction.

A.    **The district court's decision crediting conclusory, immaterial allegations over undisputed and material factual evidence was procedurally improper.**

The district court treated Eireog's sweeping allegations as true and resolved conflicts between Eireog's allegations and LGL's factual evidence in Eireog's favor to conclude that Eireog made a prima facie showing of specific personal jurisdiction in Texas.  Appx8.  This is legal error.

Eireog "bears the burden of affirmatively establishing" that both "the defendant purposefully directed its activities at residents of the forum state," and "the claim arises out of or relates to the defendant's activities with the forum state." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015); *see also Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020).  On a motion to dismiss, a court must "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's

favor." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017); *see also Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).

However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[C]ourts are not required to credit conclusory allegations, even if uncontroverted.") (internal quotation marks omitted).  Thus, "when unsubstantiated allegations are controverted by affidavit or declaration, the affidavit or declaration trumps the allegations." *In re Norplant Contraceptive Prods. Liab. Litig.*, 899 F. Supp. 315, 317 (E.D. Tex. 1995) (citing *Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826, 831 (5th Cir. 1986), *modified*, 836 F.2d 850 (5th Cir. 1988)). This Court reviews "a trial court's decision that an allegation is factual or legal, well-pled or merely conclusory" de novo.  *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39–40 (Fed. Cir. 2024).

Here, without piercing the corporate veil, the district court concluded that LGL "chose to conduct business in Texas through its subsidiaries" and that it "uses its multi-level corporate structure to place the accused products in the stream of commerce." Appx10.  The court cited five bases supporting its conclusion.  First,

the court credited Eireog's allegation that LGL "acts in concert with its wholly owned subsidiaries to deliver the accused products into the Texas market." Appx8. Second, the court credited Eireog's allegation that because LGL's subsidiaries distribute products in Texas, "LGL 'knew, or reasonably could have foreseen, that a termination point of the channel' was Texas." *Id.* (citation omitted). Third, the court held that the fact LGL's declarant (Mr. Chim) "opines on the relationship between LGL and its subsidiaries as an employee of an LGL subsidiary indicates that there is at least some degree of lack of separateness between LGL and its subsidiaries." Appx9. Fourth, the court credited Eireog's allegation that LGL has employees living and working in Texas. *Id.* Finally, the court accepted Eireog's purported evidence that LGL provides pension plans, savings plans, and deferred compensation benefits to its alleged United States employees.[12] *Id.*

But even if Eireog's conclusory and sweeping allegations are credited, the undisputed, evidence-supported facts show that LGL does not create the accused products, place them in any stream of commerce, or direct that stream to Texas. Appx42 at ¶ 3. The uncontroverted factual evidence reveals that LGL does not make, sell, offer for sale, or import the accused products. *Id.*; Appx 50 n.1. LGL is

---

[12] And though LGL disputes that it has any employees in the United States (Appx43–45 at ¶¶ 4, 12, 14), the district court never found that any alleged LGL employees in the United States play any role with respect to the accused products, or that LGL's provision of benefits to the alleged employees in the United States bears any relationship to the "stream of commerce" theory.

not involved in the daily business decisions of those entities that do. Appx44 at ¶ 8. Nor has LGL entered into any agreement with any entity regarding the accused products. *Id.* A party cannot purposefully avail itself of a forum state under the "stream of commerce" theory of personal jurisdiction when it places no products in the stream and plays no role whatsoever in that stream.

**B.    LGL did not purposefully avail itself of the Eastern District of Texas (under a "stream of commerce" theory) or the United States (under Rule 4(k)(2)).**

The actions of LGL (a holding company based in Hong Kong) alone, without imputing the actions of its indirect subsidiaries to it (the district court did not pierce the corporate veil), demonstrate that LGL never purposefully availed itself of the Eastern District of Texas or the United States.

**1.    The district court's decision that the "stream of commerce" theory supplies the Eastern District of Texas with personal jurisdiction over LGL is indisputably wrong.**

LGL is a holding company that has no bank accounts, properties, or any other assets in the United States. Appx42 at ¶ 3; Appx50 n.1. Nor does it have any employees in the United States. Appx43 at ¶ 4.

As a holding company, LGL does not perform research and development for Lenovo-branded products, does not make any products, including products under the Lenovo brands, does not sell, offer for sale, export, import, or otherwise distribute Lenovo products anywhere—not in the United States and not in Texas. Appx42–44

at ¶¶ 3–7, 10.  LGL also does not engage in sales, advertising, or marketing efforts targeting the United States, or sell or offer to sell any Lenovo-branded products on the Lenovo.com website.  Appx43 at ¶ 5.

Lenovo US and Lenovo Global Tech, the parties who sell Lenovo-branded products in the United States, are separate business entities from LGL.  LGL has no distribution, sales, or marketing agreements with Lenovo US, Lenovo Global Tech, or any other U.S. affiliate with respect to Lenovo-branded products.  Appx44 at ¶ 8.  LGL is not involved in the daily business activities and decisions of Lenovo US or Lenovo Global Tech relating to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded products in the United States.  *Id.*

None of these facts are disputed by Eireog.  Eireog relied on some public-facing materials to suggest LGL and its subsidiaries worked "in concert" to place the Lenovo-branded products into the stream of commerce.   Appx17 at ¶ 8.  However, having a similar name as other related companies and having been grouped together with other companies for marketing or investor publications are simply not evidence for the involvement of LGL in any specific activity relating to the stream of commerce.

LGL does not satisfy any version of the "stream of the commerce" test.  In *Asahi*, the Supreme Court did not issue a majority opinion regarding whether purposeful availment of a forum required more from a defendant than the mere act

of placing a product in the stream of commerce that ultimately winds up in the forum. *See Beverly Hills Fan*, 21 F.3d at 1566. Here, LGL does not perform even that "mere act" because LGL places no products in the stream of commerce. Appx42 at ¶ 3; Appx50 n.1. Like the defendants in *Colida* and *AFTG-TG*, who this Court found were not subject to personal jurisdiction in the forum states, LGL "does not ship" any accused products to customers in Texas and does not maintain any "continuous, established distribution channels" in Texas. *Colida*, 77 F. App'x at 524; *AFTG*-TG, 689 F.3d at 1365. LGL also has no "control over its subsidiaries," and does not "participate in the daily activities of its subsidiaries." *Theta IP*, 2024 WL 1283706, at *4. Rather, as the Delaware district courts found, there is "no room for ambiguity" that LGL is "a holding company that does not produce goods or services itself," and "does not intend to (nor, in fact, does it) place the accused products into the United States . . . markets." *3G Licensing*, 2019 WL 3974539, at *6.

Eireog's Amended Complaint presents threadbare, conclusory allegations that LGL "directly and/or through subsidiaries or intermediaries" makes, uses, imports, offers to sell, and or sells products in the United States. Appx19 at ¶ 11; *see also* Appx16–18 at ¶¶ 3–9. Conclusory allegations such as these, which simply recite elements of a legal standard in vague language that does not allege LGL commits any act on its own, are not entitled to any weight on a motion to dismiss. *Panda Brandywine*, 253 F.3d at 868–69. Moreover, the undisputed facts in LGL's

evidence, including a sworn declaration, show that these broad, conclusory allegations are wholly unsupported.

In sum, in no way has LGL purposefully availed itself of the jurisdiction of the Eastern District of Texas, or the United States generally, under any recognized version of the "stream of commerce" test. "Carried to its logical conclusion, [this] theory would allow the exercise of personal jurisdiction in every state, not just Texas." *Freescale Semiconductor, Inc. v. Amtran Tech. Co.*, No. A-12-CV-644-LY, 2014 WL 1603665, at *5–6 (W.D. Tex. Mar. 19, 2014) (holding that an overriding interest in serving the U.S. marketplace as a whole does not purposefully avail oneself of Texas). Yet here, unlike MediaTek in *Freescale*, LGL is a holding company and does not make anything. The district court's decision exercising personal jurisdiction over LGL under the "stream of commerce" theory is indisputably wrong. The recent, growing, and conflicting body of authority from the Eastern District of Texas should be reversed.

> **2.   The district court's decision that Rule 4(k)(2) supplies the Eastern District of Texas personal jurisdiction over LGL is indisputably wrong.**

Rule 4(k)(2) is "just a procedural rule about issuing summonses" and "is expressly subservient to the constitutional limits of due process." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 233–34 (5th Cir. 2022) (en banc). Thus, it "remains subject to the constitutional question whether a defendant is

amenable to jurisdiction." *Id.* at 234. Eireog alleged specific personal jurisdiction under a stream of commerce theory because LGL purportedly acts in concert with its subsidiaries to deliver products into the United States market. *Eireog Innovations Ltd. v. Lenovo Grp. Ltd.*, No. 2:24-cv-239-JRG-RSP, Dkt. No. 40 at 19–20 (E.D. Tex. Aug. 2, 2024). When considering a "stream of commerce" theory of personal jurisdiction under Rule 4(k)(2), it "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018).

The district court also held, in the alternative, that it has personal jurisdiction over LGL pursuant to Federal Rule of Civil Procedure 4(k)(2). Appx12–14. The third prong of Rule 4(k)(2) requires that the court's exercise of personal jurisdiction comports with due process based on LGL's contacts with the entire United States, as opposed to Texas. Appx13 (citing *Synthes (U.S.A.) v. G.M. Dos. Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1290 (Fed. Cir. 2009)). In finding that prong satisfied, the court relied on its prior conclusion that the court "has personal jurisdiction over LGL based on its contacts with Texas" to conclude that "it has personal jurisdiction over LGL based on its contacts directed to the United States at large" "under the stream of commerce theory." Appx14.

The district court's conclusion was also indisputably wrong. For the reasons stated above, LGL did not place anything into the stream of commerce (*see supra*)

and the district court did not pierce the corporate veil to warrant imputing the acts of LGL's indirect subsidiaries to LGL. The undisputed facts show that LGL does not create any product or place any product into the stream of commerce that reaches the United States.

## CONCLUSION

The Court should grant LGL's petition, vacate the district court's order, and dismiss the case for lack of personal jurisdiction.

Date: December 18, 2024

Respectfully submitted,

/s/ *Jacob A. Schroeder*
JACOB SCHROEDER
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
3300 HILLVIEW AVENUE
PALO ALTO, CA 94304-1203
(650) 849-6600

LI ZHANG
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
TWO SEAPORT LANE
BOSTON, MA 02210-2001
(617) 646-1600

*Counsel for Petitioner,*
*Lenovo Group Limited*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system on December 18, 2024.

I further certify that I caused a paper copy of this document to be served upon lead counsel for respondent Eireog Innovations Ltd. at the following address via Federal Express:

Brett Cooper
BC LAW GROUP, P.C.
200 Madison Avenue, 24th Floor
New York, NY 10016

I further certify that I caused a paper copy of this document to be served upon the presiding district court judge at the following address via Federal Express:

Hon. Rodney Gilstrap
United States District Court for the Eastern District of Texas
Sam B. Hall, Jr. Federal Building and United States Courthouse
100 East Houston Street
Marshall, Texas 75670

| Jacob A. Schroeder | /s/ Jacob A. Schroeder |
|---|---|
| Name of Counsel | Signature of Counsel |

| | |
|---|---|
| Firm: | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| Address: | 3300 Hillview Avenue |
| City, State, and Zip: | Palo Alto, CA  94304 |
| Telephone: | 650-849-6765 |
| Fax #: | 202-408-4000 |
| E-Mail address: | jacob.schroeder@finnegan.com |

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because the body of the petition contains 7,788 words, excluding the portions exempted by the rules.

2.      This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14 point font, Times New Roman.


Jacob A. Schroeder                      /s/ *Jacob A. Schroeder*
Name of Counsel                         Signature of Counsel

Firm:                   Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
Address:                3300 Hillview Avenue
City, State, and Zip:   Palo Alto, CA  94304
Telephone:              650-849-6765
Fax #:                  202-408-4000
E-Mail address:         jacob.schroeder@finnegan.com

No. _____

IN THE

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

IN RE LENOVO GROUP LIMITED,
*Petitioner*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas,
Case No. 2:24-cv-00239
Chief Judge J. Rodney Gilstrap

## APPENDIX TO PETITION FOR A WRIT OF MANDAMUS

JACOB SCHROEDER
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 HILLVIEW AVENUE
PALO ALTO, CA 94304-1203
(650) 849-6600

LI ZHANG
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
TWO SEAPORT LANE
BOSTON, MA 02210-2001
(617) 646-1600

December 18, 2024

*Counsel for Petitioner,*
*Lenovo Group Limited*

# TABLE OF CONTENTS

**Page**

**Document**

Memorandum Opinion and Order
ECF No. 56, filed October 17, 2024 ...........................................................Appx1

Amended Complaint for Patent Infringement
ECF No. 12, filed June 4, 2024 ...............................................................Appx15

Declaration of Adrian Chim
ECF No. 24-1, filed July 18, 2024...........................................................Appx41

Excerpt of Lenovo Group Limited's 2023-2024 ESG Report
ECF No. 24-2, filed July 18, 2024...........................................................Appx46

Chim Declaration Ex. A
ECF No. 24-3, filed July 18, 2024...........................................................Appx54

Chim Declaration Ex. B
ECF No. 24-4, filed July 18, 2024...........................................................Appx56

Chim Declaration Ex. C
ECF No. 24-5, filed July 18, 2024...........................................................Appx58

Chim Declaration Ex. D
ECF No. 24-6, filed July 18, 2024...........................................................Appx60

Chim Declaration Ex. E
ECF No. 24-7, filed July 18, 2024...........................................................Appx62

Exhibit 1 to Lenovo's Reply in Support of Its Motion to Dismiss for
Lack of Personal Jurisdiction
ECF No. 47-1, filed August 9, 2024.........................................................Appx64

Exhibit 2 to Lenovo's Reply in Support of Its Motion to Dismiss for
Lack of Personal Jurisdiction
ECF No. 47-2, filed August 9, 2024.........................................................Appx68

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| EIREOG INNOVATIONS LTD., | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 2:24-CV-00239-JRG |
| LENOVO GROUP LIMITED, | § § | (LEAD CASE) |
| *Defendant.* | § § § | |

| | | |
|---|---|---|
| EIREOG INNOVATIONS LTD., | § § § | |
| *Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 2:24-CV-00279-JRG-RSP |
| HEWLETT PACKARD ENTERPRISE COMPANY, | § § § § | (MEMBER CASE) |
| *Defendant.* | § § § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is Defendant Lenovo Group Limited's ("LGL") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion"). (Dkt. No. 24.) Having considered the Motion, the subsequent briefing, and for the reasons stated herein, the Court finds that the Motion should be **DENIED**.

**I.    BACKGROUND**

Plaintiff Eireog Innovations Limited ("Eireog") filed suit on April 11, 2024, alleging that LGL infringes four United States patents. (Dkt. No. 1 ¶ 1.) Eireog filed its Amended Complaint against LGL on June 4, 2024, alleging that LGL infringes five United States patents. (Dkt. No. 12

**Appx1**

¶ 1.) Eireog asserts that some of LGL's products using Intel-based CPUs, including Lenovo-branded servers, workstations, laptops, and desktops, infringe the asserted patents. (*E.g.*, *id.* ¶¶ 4, 15.) LGL is a Chinese company with its principal place of business in Hong Kong. (Dkt. No. 12 ¶ 3; Dkt. No. 24 at 2.) Lenovo (United States) Inc. ("Lenovo US") and Lenovo Global Technology (United States) Inc. ("Lenovo Global Tech.") are wholly owned subsidiaries of LGL. (Dkt. No. 12 ¶¶ 5-7; *see also* Dkt. No. 24 at 2-3.) Lenovo US and Lenovo Tech are headquartered in Morrisville, North Carolina. (Dkt. No. 12 ¶¶ 5-7.)

LGL moves to dismiss Eireog's Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

## II.    LEGAL STANDARD

### A.    Specific Personal Jurisdiction

"Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant." *Cunningham v. CBC Conglomerate, LLC*, 359 F. Supp. 3d 471, 476 (E.D. Tex. 2019). Where a claim involves substantive questions of patent law, the Court applies Federal Circuit law to evaluate personal jurisdiction. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017). However, the Fifth Circuit relies on the same analysis as the Federal Circuit in deciding whether personal jurisdiction exists. *Packless Metal Hose, Inc. v. Extek Energy Equip. (Zhejiang) Co.*, 2011 WL 504048, at *1 n.1 (E.D. Tex. Feb. 10, 2011).

Personal jurisdiction exists over a defendant where a forum state's long-arm statute permits service of process and where assertion of personal jurisdiction does not violate due process. *NexLearn*, 859 F.3d at 1375. Due to Texas's long-arm statute being "coextensive with the Due Process Clause of the Fourteenth Amendment, the two inquiries merge." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). To satisfy due process, a defendant must have

2

**Appx2**

"certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). The plaintiff bears the burden to show that the defendant has minimum contacts with the forum under the first two prongs. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Upon a showing of minimum contacts, the defendant bears the burden to prove unreasonableness. *Id.* In rare circumstances, a defendant may defeat the exercise of personal jurisdiction by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

The minimum contacts test is satisfied if a defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-98 (1980)). The existence of an "established distribution channel into the forum" is a "significant factor" when evaluating the strength of a non-movant's stream-of-commerce theory. *See id.* at 1565 n.15. The Supreme Court has, however, introduced a split of authority as to what is required to establish minimum contacts under a stream-of-commerce theory. The Federal Circuit has repeatedly refused to endorse either articulation of the stream-of-commerce theory. *See, e.g., id.* at 1566 ("We need not join this debate here, since we find that, under either version of the stream of commerce theory, plaintiff made the

required jurisdictional showing."); *see also AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1364 (Fed. Cir. 2012) ("Thus, *Beverly Hills Fan* counsels that we refrain from taking a position on the proper articulation of the stream-of-commerce theory where the facts of a particular case mandate exercising or declining to exercise personal jurisdiction under any articulation of that theory."). Instead, the Federal Circuit's approach is to determine whether the plaintiff can establish minimum contacts—or has failed to establish minimum contacts—under both theories, making the choice between theories unnecessary. *AFTG-TG*, 689 F.3d at 1364. The Federal Circuit has explained that defendants fall under the stream-of-commerce theory where "defendants, *acting in consort*, placed the accused [product] in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Beverly Hills Fan*, 21 F.3d at 1566 (emphasis added).

"When the district court's determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only a prima facie burden." *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015). "To make that showing, [the plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008). "Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *Id.*

### B. Personal Jurisdiction Under Rule 4(k)(2)

Personal jurisdiction may exist under Rule 4(k)(2) where "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is

consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). A court may exercise jurisdiction under Rule 4(k)(2) if "(1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Come de Equip. Medico*, 563 F.3d 1285, 1293-94 (Fed. Cir. 2009)). The three-step due process analysis under specific jurisdiction and Rule 4(k)(2) are similar. *Id.* However, Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* (quoting *Synthes*, 563 F.3d at 1295).

## III.    DISCUSSION

### A.    Specific Jurisdiction[1]

#### 1.    LGL has Sufficient Minimum Contacts with Texas

LGL argues that the Court lacks personal jurisdiction because LGL does not direct any activities at Texas. (Dkt. No. 24 at 6-8.) LGL asserts that it is merely a holding company that does not place anything into the stream of commerce. (*Id.*) LGL argues that it does not control its subsidiaries' activities concerning the accused products. (*Id.* at 8-10.) LGL argues that the Court should not depart from controlling law rejecting personal jurisdiction over a parent company when the plaintiff's allegations are directed to the actions of a subsidiary. (*Id.* at 8.) LGL asserts that "LGL has purposefully chosen to structure its conduct such that it should not be rendered liable to suit in any venue in the United States," "a choice that LGL is entitled to make and is a choice that is routinely respected by the United States legal system." (*Id.*)

In support of its Motion, LGL attached a declaration from Adrian Chim, Director of Group

---

[1] Here, general jurisdiction is not at issue. Therefore, the Court's analysis is limited to whether LGL is subject to specific jurisdiction in Texas.

Financial Reporting and Accounting Policy at Lenovo Hong Kong Services Limited (the "Chim Declaration"). (Dkt. No. 24-1.) The Chim Declaration states that LGL is a holding company that "does not itself manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products" and does not "itself distribute any Lenovo-branded products through established distribution channels." (Dkt. No. 24-1 ¶ 3.) The Chim Declaration admits that Lenovo US, LGL's wholly owned subsidiary, "is the entity responsible for selling Lenovo-branded computing device products in the United States." (*Id.* ¶ 6.) The Chim Declaration admits that Lenovo Global Tech, LGL's wholly owned subsidiary, "is the entity responsible for selling Lenovo-branded server products in the United States." (*Id.* ¶ 7.) LGL contends that Eireog's allegations that LGL controls its subsidiaries' activities concerning the accused products are "conclusory and . . . contradicted by the Chim Declaration." (Dkt. No. 24 at 9.)

Eireog responds that its "Amended Complaint alleges facts demonstrating that LGL has sufficient minimum contacts with Texas under the stream of commerce theory." (Dkt. No. 40 at 5.) Eireog alleges that LGL "alone and through its U.S.-based subsidiaries (such as Lenovo US and Lenovo Tech.), places such infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas" (*Id.* (citing Dkt. No. 12 ¶ 9).) Eireog also alleges that LGL "is responsible for importing, making, marketing, distributing, offering for sale, and/or selling Lenovo-branded servers, workstations, laptops, and desktops in the United States (directly or through its wholly-owned subsidiaries), including in this District." (*Id.* (citing Dkt. No. 12 ¶ 3).) Eireog asserts that evidence supports the allegations in its Amended Complaint, including LGL's website (Lenovo.com) and LGL's 2022/23 Annual Report. (*Id.* at 6-7.) Eireog also asserts that Lenovo US and Lenovo Tech are registered to do business in Texas. (*Id.* at 7 (citing Dkt. No.

12 ¶¶ 6-7).)

Further, Eireog argues that LGL portrays itself and its subsidiaries as a single company. (*Id.* at 6-8.) Specifically, Eireog argues that LGL "documents demonstrate that (1) Lenovo U.S. is a wholly owned subsidiary of LGL, (2) the board of directors of LGL controls the entire Lenovo family, including Lenovo U.S., and (3) the corporate officers have dual roles in both LGL and its subsidiaries. (*Id.* at 18 (citing Dkt. No. 40-5 (LGL 2022/23 Annual Report) at 8-13, 61, 80, 279, 281; Dkt. No. 40-6 (ESG Report) at 11).) Eireog also identifies locations of authorized sellers and sales representatives that sell, or at least offer for sale, the accused products in Texas. (*Id.* (citing Dkt. No. 12 ¶ 4).) Eireog presents additional evidence that a factual conflict exists concerning whether LGL has a United States presence and whether LGL shares its management-level employees with its US-based subsidiaries. (*Id.* at 9-10, 18.)

LGL's reply reiterates its argument that Eireog cannot establish that LGL places anything into the stream of commerce. (Dkt. No. 47 at 1-6.) LGL asserts that Eireog's opposition does "not rebut the facts set forth in the Chim declaration." (*Id.* at 1.) In response to Eireog's citation to statements from LGL's 2022/2023 Annual Report, LGL's Environment, Social, and Governance Report ("ESG Report"), and LGL's website, LGL asserts that the cited "excerpts are not tied specifically to LGL and instead describe LGL's subsidiaries." (*Id.* at 2-3.) LGL also asserts that the individuals Eireog identified as potential LGL US-based employees are not LGL employees. (*Id.* at 3.) LGL then contends that even if LGL had US-based employees, "there is no suggestion those employees would play a role in the manufacturing, sale, and distribution of Lenovo-branded products, and their presence would not alter the personal jurisdiction analysis as a result." (*Id.* at 4.) LGL asserts that "corporate formalities are not mere niceties that can be ignored in the personal jurisdiction analysis." (*Id.* at 6.)

Eireog's sur-reply reiterates its argument that the Court has specific personal jurisdiction over LGL under the stream of commerce theory. (Dkt. No. 50 at 1-5.) Eireog emphasizes its argument that LGL portrays itself and its subsidiaries as a single company. (*Id.* at 2.) Eireog argues that contrary to LGL's assertion that the 2022/2023 Annual Report refers to the global family of companies as Lenovo, the Annual Report is entitled "Lenovo Group Limited 2022/23 Annual Report," reinforcing Eireog's contention "that there is no distinction between the acts of LGL and those of its subsidiaries." (*Id.* at 2 (emphasis added by Eireog).) Eireog also argues that LGL's website (Lenovo.com), does not distinguish between LGL and its subsidiaries. (*Id.* at 4.) Eireog further points out that LGL fails to address that LGL's wholly owned subsidiaries provide for the distribution of IT products in the United States, LGL's wholly owned subsidiaries are registered to do business in Texas, and LGL has a presence in Texas through its third-party retailers. (*Id.* at 2-3.) Eireog also asserts that evidence contradicts LGL's assertion that it has no US-based employees. (*Id.* at 3-4.)

Viewing Eireog's allegations as true and the factual conflicts in Eireog's favor, the Court finds that Eireog has made a *prima facie* showing of specific jurisdiction in Texas. Eireog's Amended Complaint alleges that LGL at least acts in concert with its wholly owned subsidiaries to deliver the accused products into the Texas market under a stream of commerce theory. Eireog alleges that LGL's distribution channel—comprising its wholly owned subsidiaries—is arranged in a way that LGL "knew, or reasonably could have foreseen, that a termination point of the channel" was Texas. *Beverly Hills*, 21 F.3d at 1564. LGL's status as a holding company does not remove it from this Court's personal jurisdiction. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 779 (5th Cir. 2018).

LGL attempts to use the Chim Declaration to detach LGL from its subsidiaries. (*See*

*generally* Dkt. 24-1.) However, the Chim Declaration fails to rebut all Eireog's allegations and supporting evidence. For example, Mr. Chim is the Director of Group Financial Reporting and Accounting Policy at Lenovo Hong Kong Services Limited, not LGL. (Dkt. No. 24-1 ¶ 1.) The fact that Mr. Chim opines on the relationship between LGL and its subsidiaries as an employee of an LGL subsidiary indicates that there is at least some degree of lack of separateness between LGL and its subsidiaries. As another example, the Chim Declaration contends that LGL has no employees or place of business in the United States. (Dkt. No. 24-1 ¶ 3.) However, Eireog presents evidence that LGL has employees living and working in the United States, including in Texas. (Dkt. No. 40 at 9-10; Dkt. No. 50 at 3-4.) Eireog further presents evidence that LGL provides pension plans, savings plans, and deferred compensation benefits to certain United States regular, full-time, and part-time employees. (Dkt. No. 40 at 18 (citing Dkt. No. 40-5 (LGL 2022/23 Annual Report) at 162-64.) To the extent the Chim Declaration conflicts with Eireog's well-pleaded allegations in the Amended Complaint, the Court must view the well-pleaded allegations in the light most favorable to Eireog. *See Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (courts "must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party").

Throughout its Motion, LGL argues that courts in other districts have already addressed the issue of personal jurisdiction over LGL, holding that LGL is not subject to personal jurisdiction in those districts under either an agency or stream of commerce theory. (*E.g.*, Dkt. No. 24 at 11, 15-16.) However, the Court does not find those authorities persuasive in this case. Here, as discussed above, there are open factual disputes as to whether LGL created, controls, or directs its subsidiaries to place the allegedly infringing products into the stream of commerce in Texas.

Instead, the Court finds the decisions of other Texas district courts, including another court

in this district, more persuasive. In those cases, the courts found jurisdiction over LGL based on its conduct related to some of the same accused products and based on similar evidence and reasoning. *See AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-280-RWS-RSP, 2023 WL 7105701 (E.D. Tex. Sept. 6, 2023), *report and recommendation adopted*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 (E.D. Tex. Sept. 26, 2023) and *ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291 (W.D. Tex. 2021). In both those cases, this district and the Western District of Texas rejected many of the same arguments that LGL presents here. This district found that the plaintiff made a *prima facie* showing of personal jurisdiction under a stream of commerce theory by acting in consort with its subsidiaries to deliver the accused product into the Untied States market, including Texas. *AX Wireless*, 2023 WL 7105701, at *3-5 (Magistrate Payne recommending denying the defendant's motion to dismiss because the plaintiff established a *prima facie* case under a stream of commerce theory); *see also AX Wireless*, No. 2:22-cv-280-RWS-RSP, Dkt. No. 119 at 6-10 (Judge Schroeder adopting Judge Payne's recommendation).[2] The Western District of Texas also found that there was sufficient evidence to support personal jurisdiction over LGL based on LGL's contacts and purposeful availment under a stream of commerce theory. *ACQIS*, 572 F. Supp. 3d, 306.[3]

LGL chose to conduct business in Texas through its subsidiaries. LGL uses its multi-level corporate structure to place the accused products in the stream of commerce—resulting in the accused products being sold or offered for sale in Texas. LGL cannot now claim a due process violation when Texas courts exercise jurisdiction over it for claims arising from or relating to these

---

[2] In the alternative, Magistrate Payne also found personal jurisdiction proper under Rule 4(k)(2).
[3] The Western District of Texas also found that, in the alternative, the purposeful contacts by the other defendants— LGL subsidiaries, including Lenovo US—are imputable to LGL. *Id.* at 306-07.

sales.[4]

### 2. Eireog's Claims Arise from or Relate to LGL's Texas Contacts

LGL argues that Eireog's claims do not arise out of or relate to LGL's Texas contacts because LGL does not direct any activities at Texas. (Dkt. No. 24 at 6-8.) Eireog's infringement claims arise from LGL "making, using, offering for sale, selling and/or importing into the United States the Accused Products." (*E.g.*, Dkt. No. 12 ¶¶ 17, 27, 37, 47, 57.) LGL, directly or indirectly, places the accused products into the stream of commerce throughout the United States, including Texas. Accordingly, Eireog's claims for patent infringement arise from or relate to LGL's contacts with Texas.

### 3. The Exercise of Jurisdiction is Reasonable and Fair

To evaluate whether the exercise of personal jurisdiction is reasonable and fair, the Court weighs five factors: (1) the burden on the defendant; (2) the interests of the forum State; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering substantive social policies. *Patent Rts. Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1369 (Fed. Cir. 2010) (citing *Burger King*, 471 U.S. at 476-77). "When a defendant seeks to rely on the 'fair play and substantial justice' factor to avoid the exercise of jurisdiction by a court that otherwise would have personal jurisdiction over the defendant, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Nuance*, 626 F.3d at 1231 (citing *Burger King*, 471 U.S. at 477).

Under the first factor, LGL argues that "requiring LGL to litigate in Texas would be unreasonable" because "LGL is a holding company that does not make or sell any products, . . .

---

[4] Because the Court finds personal jurisdiction under the stream of commerce theory proper, the Court need not address Eireog's other theories.

does not conduct business in Texas, and maintains its headquarters and principal place of business . . . in Hong Kong. (Dkt. No. 24 at 17.) As to the remaining factors, LGL argues that Texas has no interest in resolving the present dispute because neither party has any Texas ties.[5] (*Id.* at 17.) LGL also contends that exercising jurisdiction would not result in efficiency and no interest would be served because Eireog's claims are not viable. (*Id.*)

The Court finds that while LGL may be slightly burdened by defending in a foreign forum, "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes*, 563 F.3d at 1299 (citing *World-Wide Volkswagen*, 444 U.S. at 294). The second, third, and fourth factors further favor jurisdiction because both Texas and the United States have an interest in enforcing federal patent laws and providing Eireog a forum to efficiently pursue its claims for patent infringement and for the parties to efficiently resolve their disputes. *See id.* ("The United States also has an interest in discouraging injuries that occur within its boundaries, including injuries resulting from patent infringement."). As to the fifth factor, the United States and Texas have an interest in furthering their social policies to discourage patent infringement.

Accordingly, the Court finds that the exercise of personal jurisdiction over LGL is both reasonable and fair.

### B.  Rule 4(k)(2)

Alternatively, the Court also has personal jurisdiction over LGL pursuant to Rule 4(k)(2). LGL argues that Rule 4(k)(2) does not provide an alternative basis for personal jurisdiction because LGL does not conduct business in the United States. (Dkt. No. 24 at 18.) In response,

---

[5] LGL also argues that "Eireog's allegations of U.S. activity are directed at Lenovo US and Lenovo Global Tech, who are subject to suit in other venues that would have a more particularized local interest in deciding this case." (Dkt. No. 24 at 17.) However, LGL has not moved to dismiss this case for improper venue. LGL's Motion is limited to lack of personal jurisdiction. (*See generally id.*)

Eireog argues that "LGL delivers its infringing products into the stream of commerce with the expectation that they will be purchased in the United States generally." (Dkt. No. 40 at 20.)

### 1.    Eireog's Patent Infringement Claims Arise Under Federal Law

The first prong of Rule 4(k)(2) requires that the claim against the defendant arises under federal law. *Synthes*, 563 F.3d at 1290. It is undisputed that federal patent law governs Eireog's patent infringement allegations. 28 U.S.C. § 1338; *Synthes*, 563 F.3d at 1296 ("The claim of patent infringement presents a federal question"). Therefore, the first prong of Rule 4(k)(2) is satisfied.

### 2.    LGL Contends it is Not Subject to Personal Jurisdiction in any United States Forum

The second prong of Rule 4(k)(2) requires that the defendant is not subject to the personal jurisdiction of any state court of general jurisdiction. *Synthes*, 563 F.3d at 1290. If the defendant "contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Merial, Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012). Therefore, a defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. *Id.*

Here, LGL contends that it cannot be sued in Texas. (*E.g.*, Dkt. No. 24 at 8.) However, LGL does not name any other state where the suit could proceed. (*See generally id.* at 6-8, 18.) Therefore, the second prong of Rule 4(k)(2) is satisfied.

### 3.    The Court's Exercise of Personal Jurisdiction Comports with Due Process

The third prong of Rule 4(k)(2) requires that the Court's exercise of personal jurisdiction comports with due process. *Synthes*, 563 F.3d at 1290. This analysis "contemplates a defendant's contacts with the ***entire United States***, as opposed to the state in which the district court sits." *Id.* at 1295 (emphasis added). To determine whether a defendant has minimum contacts, the court considers whether "(1) the defendant purposefully directed its activities at residents of the forum;

(2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair." *M-I Drilling*, 890 F.3d at 1000. Thus, Rule 4(k)(2) serves as a federal long-arm statute. *Id.* at 1296.

Here, given that the Court has already concluded that it has personal jurisdiction over LGL based on its contacts with Texas, the Court also finds that it has personal jurisdiction over LGL based on its contacts directed to the United States at large. LGL has sufficient minimum contacts with the United States under the stream of commerce theory. (*See supra* Section III.A.1.) Eireog's claims arise out of or related to LGL's activities in the United States. (*See supra* Section III.A.2.) Finally, the Court's assertion of personal jurisdiction over LGL is reasonable and fair. (*See supra* Section III.A.3.)

Accordingly, in the alternative, the Court finds that it has personal jurisdiction over LGL under Rule 4(k)(2).

## IV. CONCLUSION

Having considered the Motion, the Court finds that it should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 16th day of October, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| EIREOG INNOVATIONS LTD., | |
| Plaintiff, | Case No.  2:24-cv-00239-JRG |
| v. | **JURY TRIAL DEMANDED** |
| LENOVO GROUP LIMITED, | |
| Defendant. | |

## AMENDED COMPLAINT FOR PATENT INFRINGEMENT
## AGAINST LENOVO GROUP LIMITED

This is an action for patent infringement arising under the Patent Laws of the United States
of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff Eireog Innovations Limited ("Plaintiff" or
"Eireog") makes the following allegations against Defendant Lenovo Group Limited ("Defendant"
or "Lenovo"):

### INTRODUCTION

1.      This complaint arises from Lenovo's unlawful infringement of the following
United States patents owned by Plaintiff, which relate to improvements in processing devices and
systems:  United States Patent Nos. 9,436,626 ("the '626 Patent"), 9,442,870 ("the '870 Patent"),
8,504,777 ("the '777 Patent"), 8,117,399 ("the '399 Patent"), and 9,335,805 ("the '805 Patent")
(collectively, the "Asserted Patents").

### PARTIES

2.      Plaintiff Eireog Innovations Limited is a private company limited by shares
organized and existing under the laws of Ireland, with its principal place of business at The Hyde
Building, Suite 23, The Park, Carrickmines, Dublin 18, Ireland.  Eireog is the sole owner by

assignment of all rights, title, and interest in the Asserted Patents, including the right to recover damages for past, present, and future infringement.

3.      Defendant Lenovo Group Limited is a foreign company organized and existing under the laws of China, with its headquarters at 23rd Floor, Lincoln House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong S.A.R. of China.  Lenovo does business in Texas and in the Eastern District of Texas, directly or through intermediaries, such as its wholly-owned subsidiaries.  Lenovo is responsible for importing, making, marketing, distributing, offering for sale, and/or selling Lenovo-branded servers, workstations, laptops, and desktops in the United States (directly or through its wholly-owned subsidiaries), including in this District.

4.      Lenovo induces its subsidiaries, affiliates, retail partners, and customers in the making, using, selling, offering for sale, and/or importing throughout the United States, including within this District, infringing products (such as Lenovo-branded servers, workstations, laptops, and desktops) and placing such products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas.  Lenovo purposefully directs the Accused Products into established distribution channels within this District and the U.S. nationally. For example, Lenovo sells and offers to sell the Accused Products through its website, Lenovo.com, which may be accessed throughout the United States, the State of Texas, and this District.  Additionally, Lenovo has authorized sellers and sales representatives that offer for sale and sell the Accused Products throughout the State of Texas and to consumers throughout this District, such as:  Best Buy, 422 West Loop 281, Suite 100, Longview, Texas 75605; Costco Wholesale, 3650 West University Drive, McKinney, Texas 75071; Office Depot, 422 West Loop

281, Suite 300, Longview, Texas 75605; Target, 3092 North Eastman Road, Suite 100, Longview, Texas 75605; and Wal-Mart, 1701 East End Boulevard North, Marshall, Texas 75670.

5.      Lenovo maintains a corporate presence in the United States via at least its wholly-owned subsidiaries, including Lenovo (United States) Inc. ("Lenovo US") and Lenovo Global Technology (United States) Inc. ("Lenovo Tech.").

6.      Lenovo US is a corporation organized and existing under the laws of Delaware, with a corporate headquarters located at 1009 Think Place, Morrisville, NC 27560.  Lenovo US is registered to do business in the State of Texas and may be served through CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

7.      Lenovo Tech. is a corporation organized and existing under the laws of Delaware, with a corporate headquarters located at 1009 Think Place, Morrisville, NC 27560.  Lenovo Tech. is registered to do business in the State of Texas and may be served through CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

8.      Lenovo and its U.S.-based subsidiaries (which act as part of a global network of sales and manufacturing subsidiaries) operate as agents of one another and vicariously as parts of the same business group to work in concert together.  For example, in its 2022/23 Annual Report, Lenovo describes itself and its subsidiaries as follows:

> Lenovo Group Limited (the "Company") and its subsidiaries (together, the "Group") develop, manufacture and market reliable, high-quality, secure and easy-to-use technology products and services. Its product lines include legendary Think-branded commercial personal computers and Idea-branded consumer personal computers, as well as servers, workstations, and a family of mobile internet devices, including tablets and smartphones.

Ex. 1 at 192.  Lenovo identifies U.S.-based subsidiaries (including but not limited to Lenovo US and Lenovo Tech.) in its list of "principal subsidiaries."  *Id.* at 279, 281.  Lenovo describes its "principal subsidiaries" as follows:

The following includes the principal subsidiaries directly or indirectly held by the Company and, in the opinion of the directors, are significant to the results of the year or form a substantial portion of the net assets of the Group. The directors consider that giving details of other subsidiaries would result in particulars of excessive length.

*Id.* at 276.  Lenovo identifies its 2023 "percentage of issued share capital held" for Lenovo US and Lenovo Tech. as "100%."  *Id.* at 279, 281.  Further, Lenovo identifies the "principal activities" for Lenovo US as "[d]istribution of IT products" and the "principal activities" for Lenovo Tech. as "[p]rovision of IT services and distribution of IT products."  *Id.*  As such, Lenovo US and Lenovo Tech. are agents of Lenovo.  At the direction and control of Lenovo, U.S.-based subsidiaries (including but not limited to Lenovo US and Lenovo Tech.) make, use, import, offer to sell, and/or sell Lenovo-branded servers, workstations, laptops, and desktops that infringe the Asserted Patents, including in the State of Texas and this District.

9.      Lenovo, alone and through its U.S.-based subsidiaries (such as Lenovo US and Lenovo Tech.), places such infringing products into the stream of commerce via established distribution channels knowing or understanding that such products would be sold and used in the United States, including in the Eastern District of Texas.  Lenovo has derived substantial revenue from infringing acts in the United States, including from the sale and use of infringing products. *See* Ex. 1 at 225 (showing revenues for "Americas").

## JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      This Court has personal jurisdiction over Lenovo in this action because Lenovo has committed acts within Texas (and this District) giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Lenovo would not

offend traditional notions of fair play and substantial justice. Lenovo, directly and/or through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, making, using, importing, offering to sell, and/or selling products that infringe the Asserted Patents. Courts in Texas have concluded that Lenovo is subject to personal jurisdiction in the State of Texas. *See ACQIS LLC v. Lenovo Grp. Ltd.*, 572 F. Supp. 3d 291, 307 (W.D. Tex. 2021) ("this Court finds that the exercise of personal jurisdiction over [Lenovo Group Limited] is both reasonable and fair."); *see also AX Wireless LLC v. Lenovo Grp. Ltd.*, No. 2:22-cv-00280-RWS-RSP, Dkt. No. 110 (report and recommendation) (E.D. Tex. Sept. 6, 2023) ("exercising personal jurisdiction [over Lenovo Grp. Ltd.] would not offend traditional notions of fair place and substantial justice.").

12.     Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). Lenovo, directly and/or through subsidiaries or intermediaries, has transacted business in this District and has committed acts of direct infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the Asserted Patents. Venue is also proper as to Lenovo because it is a foreign corporation organized under the laws of China and suits against foreign entities are proper in any judicial district. *See* 28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).

## COUNT I

### INFRINGEMENT OF U.S. PATENT NO. 9,436,626

13.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

14.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,436,626, titled

"Processor interrupt interface with interrupt partitioning and virtualization enhancements." The '626 Patent was duly and legally issued by the United States Patent and Trademark Office on September 6, 2016. The '626 Patent is valid and enforceable. A true and correct copy of the '626 Patent is attached hereto as Exhibit 2.

15.     Lenovo makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Lenovo's products using Intel-based CPUs (Haswell-based architecture and newer) (including but not limited to ThinkSystem Servers (SD530 V3, SD550 V3, SE350 V2, SE360 V2, ST650 V3, SR630 V3, SR650 V3, SR850 V3, SR860 V3, SR950 V3, SD650 V3, SD650-I V3, SD650-N V3, SE450, ST50 V2, SR250 V2, ST650 V2, SR630 V2, SR650 V2, SR670 V2, SD630 V2, SD650 V2, SD650-N V2, SN550 V2 , SE350, ST50, SR530, SR630, SR650, SR850, SR850P, SR850 V2, SR860 V2, SR950, ST550, SN550, SN850), ThinkAgile Systems (HX630 V3, HX650 V3, HX1330, HX2330, HX3330, HX5530, HX7530, HX7820), ThinkStation Workstations (P3 Tiny Workstation, P3 Tower Workstation, P3 Ultra Small Workstation, P5 Workstation, P7 Workstation, PX Workstation), ThinkCentre Desktops (M80q Gen 4, Neo 50s Gen 4, M70s Gen 3, M70q Gen 3, Gen 4, M90q Gen 3, M90t Gen 3), ThinkPad Laptops (ThinkPad X1, ThinkPad E16, ThinkPad T14, ThinkPad T16 Gen 2), Legion Laptops (Legion Pro 71, Legion Pro 5i Gen 8), ThinkBook Laptops (ThinkBook 16 Gen 1, ThinkBook 14 Gen 6), IdeaPads (IdeaPad 5i), and Yoga Laptops (Yoga 9i, 7i)) and AMD Zen-based CPUs (including but not limited to ThinkSystem Servers (SE455 V3, SR635 V3, SR655 V3, SR645 V3, SR665 V3, SR675 V3, SD665-N V3, SR635, SR655 V3, SR645, SR665), ThinkAgile Systems (HX645 V3 and HX655 V3), ThinkStation Workstations (P620 Workstation, P8 Workstation), ThinkCentre Desktops (M75q, M75s), ThinkPad Laptops (L14 Gen 3, P14s Gen 4, T16 Gen 2), ThinkBook Laptops (ThinkBook 16 Gen 6, ThinkBook 14 Gen 4), Legion Pro

Laptops (Legion Pro 5 Gen 8), IdeaPad Laptops (Flex 5, Slim 5), and Yoga Laptops (Yoga 7)) (the "Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '626 Patent. Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

16.     The Accused Products satisfy all claim limitations of one or more claims of the '626 Patent. A claim chart comparing exemplary independent claim 1 of the '626 Patent to representative Accused Products is attached as Exhibits 3 and 4.

17.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '626 Patent pursuant to 35 U.S.C. § 271(a).

18.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '626 Patent in violation of 35 U.S.C. § 271(b). At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '626 Patent and the infringing nature of the Accused Products through, for example, the '626 Patent claim charts served therewith. Despite this knowledge of the '626 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibits 3 and 4) to use the Accused Products in ways that directly infringe the '626 Patent. For example, Lenovo advertises the benefits of Intel Xeon and AMD EPYC processors and their impact on Lenovo's products, such as the accused ThinkSystem and ThinkAgile products. *See* Ex. 5 (https://www.lenovo.com/us/en/c/servers-storage/servers-intel/?orgRef=https%253A%252F%252Fwww.google.com%252F); Ex. 6 (https://lenovopress.lenovo.com/lp1866-launch-5th-gen-intel-xeon-scalable-

processors?orgRef=https%253A%252F%252Fwww.google.com%252F);                Ex.        7

(https://www.lenovo.com/us/en/servers-

storage/alliance/amd/?orgRef=https%253A%252F%252Fwww.google.com%252F).        Further,

Lenovo provides customers with instructions and user manuals detailing how to setup, configure,

and utilize the Accused Products to utilize the infringing functionality.  *See, e.g.*,  Ex. 8

(https://pubs.lenovo.com/st650-v2/ST650_V2_setup_guide.pdf);                Ex.        9

(https://pubs.lenovo.com/thinkagile-hx/hx_series_user_guide.pdf).     Lenovo    provides    these

instructions, user manuals, and other materials knowing and intending (or with willful blindness

to the fact) that its customers and end users will commit these infringing acts.  Lenovo also

continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its

knowledge of the '626 Patent, thereby specifically intending for and inducing its customers to

infringe the '626 Patent through the customers' normal and customary use of the Accused

Products.

    19.    Lenovo has also infringed, and continues to infringe, one or more claims of the '626

Patent by selling, offering for sale, or importing into the United States, the Accused Products,

knowing that the Accused Products constitute a material part of the inventions claimed in the '626

Patent, are especially made or adapted to infringe the '626 Patent, and are not staple articles or

commodities of commerce suitable for non-infringing use.  At least as of the filing and service of

the original  complaint on April 11, 2024, Lenovo has knowledge of the '626 Patent and the

infringing nature of the Accused Products through, for example, the '626 Patent claim chart served

therewith.  Lenovo has been, and currently is, contributorily infringing the '626 Patent in violation

of 35 U.S.C. §§ 271(c) and/or (f).  For example, the accused processor interrupt management

features constitute a material part of the inventions claimed in the '626 Patent, are especially made

or adapted to infringe the '626 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibits 3 and 4.

20.    On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '626 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '626 Patent during the relevant time period or were not required to mark during the relevant time period.

21.    As a result of Lenovo's direct infringement of the '626 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

22.    As a result of Lenovo's indirect infringement of the '626 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '626 Patent.

## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 9,442,870

23.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

24.    Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,442,870, titled "Interrupt priority management using partition-based priority blocking processor registers."

The '870 Patent was duly and legally issued by the United States Patent and Trademark Office on September 13, 2016.  The '870 Patent is valid and enforceable.  A true and correct copy of the '870 Patent is attached hereto as Exhibit 10.

25.     Lenovo makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Lenovo's products using Intel-based CPUs (Haswell-based architecture and newer) (including but not limited to ThinkSystem Servers (SD530 V3, SD550 V3, SE350 V2, SE360 V2, ST650 V3, SR630 V3, SR650 V3, SR850 V3, SR860 V3, SR950 V3, SD650 V3, SD650-I V3, SD650-N V3, SE450, ST50 V2, SR250 V2, ST650 V2, SR630 V2, SR650 V2, SR670 V2, SD630 V2, SD650 V2, SD650-N V2, SN550 V2 , SE350, ST50, SR530, SR630, SR650, SR850, SR850P, SR850 V2, SR860 V2, SR950, ST550, SN550, SN850), ThinkAgile Systems (HX630 V3, HX650 V3, HX1330, HX2330, HX3330, HX5530, HX7530, HX7820), ThinkStation Workstations (P3 Tiny Workstation, P3 Tower Workstation, P3 Ultra Small Workstation, P5 Workstation, P7 Workstation, PX Workstation), ThinkCentre Desktops (M80q Gen 4, Neo 50s Gen 4, M70s Gen 3, M70q Gen 3, Gen 4, M90q Gen 3, M90t Gen 3), ThinkPad Laptops (ThinkPad X1, ThinkPad E16, ThinkPad T14, ThinkPad T16 Gen 2), Legion Laptops (Legion Pro 71, Legion Pro 5i Gen 8), ThinkBook Laptops (ThinkBook 16 Gen 1, ThinkBook 14 Gen 6), IdeaPads (IdeaPad 5i), and Yoga Laptops (Yoga 9i, 7i)) and AMD Zen-based CPUs (including but not limited to ThinkSystem Servers (SE455 V3, SR635 V3, SR655 V3, SR645 V3, SR665 V3, SR675 V3, SD665-N V3, SR635, SR655 V3, SR645, SR665), ThinkAgile Systems (HX645 V3 and HX655 V3), ThinkStation Workstations (P620 Workstation, P8 Workstation), ThinkCentre Desktops (M75q, M75s), ThinkPad Laptops (L14 Gen 3, P14s Gen 4, T16 Gen 2), ThinkBook Laptops (ThinkBook 16 Gen 6, ThinkBook 14 Gen 4), Legion Pro Laptops (Legion Pro 5 Gen 8), IdeaPad Laptops (Flex 5, Slim 5), and Yoga Laptops (Yoga 7)) (the

"Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '870 Patent. Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

26. The Accused Products satisfy all claim limitations of one or more claims of the '870 Patent. A claim chart comparing exemplary independent claim 1 of the '870 Patent to representative Accused Products is attached as Exhibits 11 and 12.

27. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '870 Patent pursuant to 35 U.S.C. § 271(a).

28. Lenovo also knowingly and intentionally induces infringement of one or more claims of the '870 Patent in violation of 35 U.S.C. § 271(b). At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '870 Patent and the infringing nature of the Accused Products through, for example, the '870 Patent claim charts served therewith. Despite this knowledge of the '870 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibits 11 and 12) to use the Accused Products in ways that directly infringe the '870 Patent. For example, Lenovo advertises the benefits of Intel Xeon and AMD EPYC processors and their impact on Lenovo's products, such as the accused ThinkSystem and ThinkAgile products. *See* Ex. 5 (https://www.lenovo.com/us/en/c/servers-storage/servers-intel/?orgRef=https%253A%252F%252Fwww.google.com%252F); Ex. 6 (https://lenovopress.lenovo.com/lp1866-launch-5th-gen-intel-xeon-scalable-processors?orgRef=https%253A%252F%252Fwww.google.com%252F); Ex. 7

(https://www.lenovo.com/us/en/servers-storage/alliance/amd/?orgRef=https%253A%252F%252Fwww.google.com%252F). Further, Lenovo provides customers with instructions and user manuals detailing how to setup, configure, and utilize the Accused Products to utilize the infringing functionality. *See, e.g.*, Ex. 8 (https://pubs.lenovo.com/st650-v2/ST650_V2_setup_guide.pdf); Ex. 9 (https://pubs.lenovo.com/thinkagile-hx/hx_series_user_guide.pdf). Lenovo provides these instructions, user manuals, and other materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts. Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '870 Patent, thereby specifically intending for and inducing its customers to infringe the '870 Patent through the customers' normal and customary use of the Accused Products.

29.     Lenovo has also infringed, and continues to infringe, one or more claims of the '870 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '870 Patent, are especially made or adapted to infringe the '870 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '870 Patent and the infringing nature of the Accused Products through, for example, the '870 Patent claim chart served therewith. Lenovo has been, and currently is, contributorily infringing the '870 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the accused processor interrupt management features constitute a material part of the inventions claimed in the '870 Patent, are especially made

or adapted to infringe the '870 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibits 11 and 12.

30.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '870 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '870 Patent during the relevant time period or were not required to mark during the relevant time period.

31.     As a result of Lenovo's direct infringement of the '870 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

32.     As a result of Lenovo's indirect infringement of the '870 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '870 Patent.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 8,504,777

33.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

34.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,504,777, titled "Data processor for processing decorated instructions with cache bypass."  The '777 Patent was

duly and legally issued by the United States Patent and Trademark Office on August 6, 2013. The '777 Patent is valid and enforceable.  A true and correct copy of the '777 Patent is attached hereto as Exhibit 13.

35.    Lenovo makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Lenovo's products using Intel-based CPUs (Skylake-based architecture and newer) (including but not limited to ThinkSystem Servers (SD530 V3, SD550 V3, SE350 V2, SE360 V2, ST650 V3, SR630 V3, SR650 V3, SR850 V3, SR860 V3, SR950 V3, SD650 V3, SD650-I V3, SD650-N V3, SE450, ST50 V2, SR250 V2, ST650 V2, SR630 V2, SR650 V2, SR670 V2, SD630 V2, SD650 V2, SD650-N V2, SN550 V2 , SE350, ST50, SR530, SR630, SR650, SR850, SR850P, SR850 V2, SR860 V2, SR950, ST550, SN550, SN850) and ThinkAgile Systems (HX630 V3, HX650 V3, HX1330, HX2330, HX3330, HX5530, HX7530, HX7820)) and AMD-based EPYC CPUs (including but not limited to ThinkSystem Servers (SE455 V3, SR635 V3, SR655 V3, SR645 V3, SR665 V3, SR675 V3, SD665-N V3, SR635, SR655 V3, SR645, SR665) and ThinkAgile Systems (HX645 V3 and HX655 V3)) (the "Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '777 Patent.  Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

36.    The Accused Products satisfy all claim limitations of one or more claims of the '777 Patent.  A claim chart comparing exemplary independent claim 16 of the '777 Patent to representative Accused Products is attached as Exhibits 14 and 15.

37.    By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '777 Patent pursuant to 35 U.S.C. § 271(a).

38.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '777 Patent in violation of 35 U.S.C. § 271(b).  At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '777 Patent and the infringing nature of the Accused Products through, for example, the '777 Patent claim chart served therewith.  Despite this knowledge of the '777 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibits 14 and 15) to use the Accused Products in ways that directly infringe the '777 Patent.  For example, Lenovo advertises the benefits of Intel Xeon and AMD EPYC processors and their impact on Lenovo's products, such as the accused ThinkSystem and ThinkAgile products.  *See* Ex. 5 (https://www.lenovo.com/us/en/c/servers-storage/servers-intel/?orgRef=https%253A%252F%252Fwww.google.com%252F);     Ex.     6 (https://lenovopress.lenovo.com/lp1866-launch-5th-gen-intel-xeon-scalable-processors?orgRef=https%253A%252F%252Fwww.google.com%252F);                 Ex.      7 (https://www.lenovo.com/us/en/servers-storage/alliance/amd/?orgRef=https%253A%252F%252Fwww.google.com%252F).     Further, Lenovo provides customers with instructions and user manuals detailing how to setup, configure, and utilize the Accused Products to utilize the infringing functionality.  *See, e.g.*, Ex. 8 (https://pubs.lenovo.com/st650-v2/ST650_V2_setup_guide.pdf);                 Ex.                 9 (https://pubs.lenovo.com/thinkagile-hx/hx_series_user_guide.pdf).     Lenovo     provides     these instructions, user manuals, and other materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '777 Patent, thereby specifically intending for and inducing its customers to

15
**Appx29**

infringe the '777 Patent through the customers' normal and customary use of the Accused Products.

39.     Lenovo has also infringed, and continues to infringe, one or more claims of the '777 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '777 Patent, are especially made or adapted to infringe the '777 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use. At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '777 Patent and the infringing nature of the Accused Products through, for example, the '777 Patent claim chart served therewith. Lenovo has been, and currently is, contributorily infringing the '777 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f). For example, the accused cache processing features constitute a material part of the inventions claimed in the '777 Patent, are especially made or adapted to infringe the '777 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibits 14 and 15.

40.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '777 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '777 Patent during the relevant time period or were not required to mark during the relevant time period.

41.     As a result of Lenovo's direct infringement of the '777 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

42.     As a result of Lenovo's indirect infringement of the '777 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '777 Patent.

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 8,117,399**

43.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

44.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 8,117,399, titled "Processing of coherent and incoherent accesses at a uniform cache." The '399 Patent was duly and legally issued by the United States Patent and Trademark Office on February 14, 2012. The '399 Patent is valid and enforceable. A true and correct copy of the '399 Patent is attached hereto as Exhibit 16.

45.     Lenovo makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Lenovo's products using Intel-based CPUs (Skylake-based architecture and newer) (including but not limited to ThinkSystem Servers (SD530 V3, SD550 V3, SE350 V2, SE360 V2, ST650 V3, SR630 V3, SR650 V3, SR850 V3, SR860 V3, SR950 V3, SD650 V3, SD650-I V3, SD650-N V3, SE450, ST50 V2, SR250 V2, ST650 V2, SR630 V2, SR650 V2, SR670 V2, SD630 V2, SD650 V2, SD650-N V2, SN550 V2 , SE350, ST50, SR530, SR630, SR650, SR850, SR850P, SR850 V2, SR860 V2, SR950, ST550, SN550, SN850) and ThinkAgile Systems (HX630 V3, HX650 V3, HX1330, HX2330, HX3330, HX5530, HX7530,

17
**Appx31**

HX7820)) and AMD-based EPYC CPUs (including but not limited to ThinkSystem Servers (SE455 V3, SR635 V3, SR655 V3, SR645 V3, SR665 V3, SR675 V3, SD665-N V3, SR635, SR655 V3, SR645, SR665) and ThinkAgile Systems (HX645 V3 and HX655 V3)) (the "Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '399 Patent.  Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

46.     The Accused Products satisfy all claim limitations of one or more claims of the '399 Patent.  A claim chart comparing exemplary independent claim 14 of the '399 Patent to representative Accused Products is attached as Exhibits 17 and 18.

47.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '399 Patent pursuant to 35 U.S.C. § 271(a).

48.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '399 Patent in violation of 35 U.S.C. § 271(b).  At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '399 Patent and the infringing nature of the Accused Products through, for example, the '399 Patent claim chart served therewith.  Despite this knowledge of the '399 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibits 17 and 18) to use the Accused Products in ways that directly infringe the '399 Patent.  For example, Lenovo advertises the benefits of Intel Xeon and AMD EPYC processors and their impact on Lenovo's products, such as the accused ThinkSystem and ThinkAgile products.  *See* Ex. 5 (https://www.lenovo.com/us/en/c/servers-storage/servers-intel/?orgRef=https%253A%252F%252Fwww.google.com%252F);     Ex.     6

(https://lenovopress.lenovo.com/lp1866-launch-5th-gen-intel-xeon-scalable-processors?orgRef=https%253A%252F%252Fwww.google.com%252F);     Ex.     7 (https://www.lenovo.com/us/en/servers-storage/alliance/amd/?orgRef=https%253A%252F%252Fwww.google.com%252F).     Further, Lenovo provides customers with instructions and user manuals detailing how to setup, configure, and utilize the Accused Products to utilize the infringing functionality. *See, e.g.*, Ex. 8 (https://pubs.lenovo.com/st650-v2/ST650_V2_setup_guide.pdf);     Ex.     9 (https://pubs.lenovo.com/thinkagile-hx/hx_series_user_guide.pdf).     Lenovo  provides  these instructions, user manuals, and other materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '399 Patent, thereby specifically intending for and inducing its customers to infringe the '399 Patent through the customers' normal and customary use of the Accused Products.

49.    Lenovo has also infringed, and continues to infringe, one or more claims of the '399 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '399 Patent, are especially made or adapted to infringe the '399 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  At least as of the filing and service of the original complaint on April 11, 2024, Lenovo has knowledge of the '399 Patent and the infringing nature of the Accused Products through, for example, the '399 Patent claim chart served therewith.  Lenovo has been, and currently is, contributorily infringing the '399 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the accused cache processing features constitute

a material part of the inventions claimed in the '399 Patent, are especially made or adapted to infringe the '399 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibits 17 and 18.

50.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '399 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '399 Patent during the relevant time period or were not required to mark during the relevant time period.

51.     As a result of Lenovo's direct infringement of the '399 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

52.     As a result of Lenovo's indirect infringement of the '399 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '399 Patent.

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 9,335,805

53.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

54.     Plaintiff owns by assignment all rights, title, and interest, including the right to recover damages for past, present, and future infringement, in U.S. Patent No. 9,335,805, titled

"Method and apparatus for managing power in a multi-core processor." The '805 Patent was duly and legally issued by the United States Patent and Trademark Office on May 10, 2016. The '805 Patent is valid and enforceable. A true and correct copy of the '805 Patent is attached hereto as Exhibit 19.

55. Lenovo makes, uses, offers for sale, sells, and/or imports certain products, including without limitation Lenovo's products using Intel Core CPUs (12th Generation (Alder Lake) and newer) (including but not limited to IdeaPad Laptops (5i, 5i 2-in-1, Slim 3i, Slim 5i, Pro 5i, Flex 3i, Flex 5i), ThinkBook Laptops (13s, 13x, 14, 14 2-in-1, 15, 16, 16p), LOQ Laptops, Yoga Laptops (7i, Pro 7i, 7i 2-in-1, 9i, Book 9i, Pro 9i, 9i 2-in-1), Legion Laptops (5i, Pro 5i, Slim 5i, 7i, Pro 7i, Slim 7i, 9i, Slim 9i), Lenovo Laptops (Slim 7i), Yoga Desktops (AIO 9i), LOQ Tower, ThinkCentre Desktops (Neo 30a, Neo 50s, Neo 50q, M60q, M70a, M70s, M70q, M70t, M90a, M90s, M90q, M90t), Legion Tower Desktops (5i, 7i), IdeaCentre Desktops (Mini, Tower, AIO 3i, 5i, AIO 5i, AIO I), ThinkPad Laptops and Mobile Workstations (X1 Carbon, X1 Yoga, X1 Fold, X1 Extreme, X1 Nano, X1 2-in-1, X13, X13 Yoga, X13 2-in-1, T14, T14s, T15p, T16, P1, P14s, P15v, P16, P16s, P16v, L13, L13 Yoga, L14, L15, L16, E14, E15, E16), ThinkStation Workstations (P2 Tower, P3 Tiny, P3 Tower, P3 Ultra Small Form Factor)) (the "Accused Products"), that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '805 Patent. Identification of the accused products will be provided in Plaintiff's infringement contentions pursuant to the Court's scheduling order.

56. The Accused Products satisfy all claim limitations of one or more claims of the '805 Patent. A claim chart comparing exemplary independent claim 6 of the '805 Patent to representative Accused Products is attached as Exhibit 20.

57.     By making, using, offering for sale, selling and/or importing into the United States the Accused Products, Lenovo has injured Plaintiff and is liable for infringement of the '805 Patent pursuant to 35 U.S.C. § 271(a).

58.     Lenovo also knowingly and intentionally induces infringement of one or more claims of the '805 Patent in violation of 35 U.S.C. § 271(b).  At least as of the filing and service of this complaint, Lenovo has knowledge of the '805 Patent and the infringing nature of the Accused Products through, for example, the '805 Patent claim charts served therewith.  Despite this knowledge of the '805 Patent, Lenovo continues to actively encourage and instruct its customers and end users (for example, through user manuals and online instruction materials on its website and materials cited in Exhibit 20) to use the Accused Products in ways that directly infringe the '805 Patent.  For example, Lenovo advertises the benefits of Intel Core processors and their impact on Lenovo's products, such as the accused desktop and laptop products.  *See* Ex. 21 (https://www.lenovo.com/us/en/faqs/intel/13th-gen-intel-core-desktop-processors/);     Ex.     22 (https://www.lenovo.com/us/en/faqs/intel/12th-gen-intel-core-laptop-processors/).          Further, Lenovo provides customers with instructions and user manuals detailing how to setup, configure, and utilize the Accused Products to utilize the infringing functionality.  *See, e.g.*, Ex. 23 (https://download.lenovo.com/consumer/mobiles_pub/lenovo_thinkbook_14_16_gen_6_ug_en.pdf);                              Ex.                              24 (https://download.lenovo.com/consumer/mobiles_pub/ideapad_slim_5i_15_ug_en.pdf).  Lenovo provides these instructions, user manuals, and other materials knowing and intending (or with willful blindness to the fact) that its customers and end users will commit these infringing acts.  Lenovo also continues to make, use, offer for sale, sell, and/or import the Accused Products, despite its knowledge of the '805 Patent, thereby specifically intending for and inducing its

customers to infringe the '805 Patent through the customers' normal and customary use of the Accused Products.

59.     Lenovo has also infringed, and continues to infringe, one or more claims of the '805 Patent by selling, offering for sale, or importing into the United States, the Accused Products, knowing that the Accused Products constitute a material part of the inventions claimed in the '805 Patent, are especially made or adapted to infringe the '805 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use.  At least as of the filing and service of this complaint, Lenovo has knowledge of the '805 Patent and the infringing nature of the Accused Products through, for example, the '805 Patent claim chart served therewith.  Lenovo has been, and currently is, contributorily infringing the '805 Patent in violation of 35 U.S.C. §§ 271(c) and/or (f).  For example, the accused processor power management features constitute a material part of the inventions claimed in the '805 Patent, are especially made or adapted to infringe the '805 Patent, and are not staple articles or commodities of commerce suitable for non-infringing use, as demonstrated by the evidence in Exhibit 20.

60.     On information and belief, Plaintiff (including its predecessors and any licensees) complied with 35 U.S.C. § 287 during the relevant time period because Plaintiff, any predecessor assignees to the '805 Patent, and any licensees did not make, offer for sale, or sell products that practice(d) the '805 Patent during the relevant time period or were not required to mark during the relevant time period.

61.     As a result of Lenovo's direct infringement of the '805 Patent, Plaintiff is entitled to monetary damages (past, present, and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court.

62.     As a result of Lenovo's indirect infringement of the '805 Patent, Plaintiff is entitled to monetary damages (present and future) in an amount adequate to compensate for Lenovo's infringement, but in no event less than a reasonable royalty for the use made of the invention by Lenovo, together with interest and costs as fixed by the Court, accruing as of the time Lenovo obtained knowledge of the '805 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter:

a.     A judgment in favor of Plaintiff that Lenovo has infringed, either literally and/or under the doctrine of equivalents, the '626, '870, '777, '399, and '805 Patents;

b.     A judgment and order requiring Lenovo to pay Plaintiff its damages (past, present, and future), costs, expenses, and pre-judgment and post-judgment interest for Lenovo's infringement of the '626, '870, '777, '399, and '805 Patents;

c.     A judgment and order requiring Lenovo to pay Plaintiff compulsory ongoing licensing fees, as determined by the Court in equity.

d.     A judgment and order requiring Lenovo to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest and compensation for infringing products released after the filing of this case that are not colorably different from the accused products;

e.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Lenovo; and

f.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


Dated:  June 4, 2024                              Respectfully submitted,

                                                  By: *<u>Brett E. Cooper</u>*
                                                  Brett E. Cooper (NY SBN 4011011)
                                                  bcooper@bclgpc.com
                                                  Seth Hasenour (TX SBN 24059910)
                                                  shasenour@bclgpc.com
                                                  Jonathan Yim (TX SBN 24066317)
                                                  jyim@bclgpc.com
                                                  Drew B. Hollander (NY SBN 5378096)
                                                  dhollander@bclgpc.com

                                                  **BC LAW GROUP, P.C.**
                                                  200 Madison Avenue, 24th Floor
                                                  New York, NY 10016
                                                  Phone: 212-951-0100

                                                  ***Attorneys for Plaintiff Eireog Innovations Limited***

**CERTIFICATE OF SERVICE**

I certify that this document is being served upon counsel of record for Defendant on June 4, 2024 via electronic service.

*/s/ Brett E. Cooper*
Brett E. Cooper

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EIREOG INNOVATIONS LTD., | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-00239-JRG |
| LENOVO GROUP LIMITED, | |
| Defendant. | |

**DECLARATION OF ADRIAN CHIM**

I, Adrian Chim, declare as follows:

1.      I am an employee of Lenovo Hong Kong Services Limited and my title is Director, Group Financial Reporting and Accounting Policy. I have held that position since June 2015. I submit this declaration based on my knowledge of the facts set forth herein and my investigation of the relevant corporate records and, if called upon as a witness, I could and would competently testify as to the truth of each statement below.

2.      Lenovo Group Limited ("LGL") is a company incorporated in Hong Kong with its principal place of business in Hong Kong at the address Lincoln House, 23rd Floor, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong.

3.      LGL is and has been a holding company, which serves as a direct and indirect parent company for its subsidiaries. As a holding company, LGL does not itself manufacture, sell, offer for sale, export, import, or otherwise distribute any Lenovo-branded products. Nor has LGL itself distributed any Lenovo-branded products through established distribution channels.

4.      LGL itself does not operate in the United States, make products for the United States market, or offer services to customers in the United States. LGL is not authorized, registered, or licensed to do business in Texas or anywhere else in the United States and has no place of business, sales, or presence in Texas or anywhere else in the United States. LGL has no bank accounts, real property, personal property, telephone listing, or any other assets in Texas or anywhere else in the United States. LGL does not store or maintain documents in Texas. And LGL has no employees in Texas or anywhere else in the United States. Nor has LGL ever engaged in end-user support in Texas.

5.      LGL does not itself engage in any sales, advertising, or marketing efforts targeting Texas or anywhere else in the United States. LGL does not itself sell or offer to sell any Lenovo-branded products or services on the Lenovo.com website.

6.      Lenovo (United States) Inc. ("Lenovo US") is the entity responsible for selling Lenovo-branded computing device products in the United States. Lenovo US purchases those computing device products from another LGL subsidiary, Lenovo PC HK Limited, and then imports them into the United States for sale. Lenovo US is a Delaware corporation and maintains its principal place of business in Morrisville, North Carolina. Lenovo PC HK Limited is a Chinese company having its principal place of business in Hong Kong.

7.      Lenovo Global Technology (United States) Inc. ("Lenovo Global Tech") is the entity responsible for selling Lenovo-branded server products in the United States. Lenovo Global Tech purchases those server products from Lenovo Global Technology HK Ltd. and then imports them into the United States for sale. Lenovo Global Tech is a Delaware corporation and maintains its principal place of business in Morrisville, North Carolina. Lenovo Global Technology HK Ltd.is a Chinese company having its principal place of business in Hong Kong.

**Appx43**

8.      LGL is not involved in the daily business activities and decisions of either Lenovo US or Lenovo Global Tech pertaining to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded computing or server products in the United States, and neither Lenovo US nor Lenovo Global Tech need the approval of LGL with respect to those business activities. Furthermore, LGL has not entered into any distribution, sales, or marketing agreements with Lenovo US, Lenovo Global Tech, or any other United States affiliate related to Lenovo-branded computing or server products. LGL is also not involved in any manufacturing, sales, advertising, or marketing activities for Lenovo US or Lenovo Global Tech.

9.      Similarly, neither Lenovo US nor Lenovo Global Tech need the approval of Lenovo PC HK or Lenovo Global Technology HK Ltd. with respect to the daily business activities and decisions pertaining to the use, sale, offer for sale, marketing, distribution, or importation of Lenovo-branded computing or server products in the United States.

10.     LGL did not and does not conduct any research and development with respect to Lenovo-branded computing or server products. Nor has LGL licensed any such products to Lenovo US or Lenovo Global Tech.

11.     LGL also does not pay or reimburse for any expenses incurred by Lenovo US or Lenovo Global Tech. LGL does not pay any wages or salaries to employees of Lenovo US or Lenovo Global Tech.

12.     There are no common officers or directors between LGL on the one hand and Lenovo US or Lenovo Global Tech on the other. The officers and directors of LGL are listed in the document attached to this declaration as Exhibit A. The officers and directors of Lenovo US are listed in the document attached to this declaration as Exhibit B. The officers and directors of Lenovo Global Tech are listed in the document attached to this declaration as

3

**Appx44**

Exhibit C. There are also no common officers or directors between Lenovo PC HK Limited on the one hand and Lenovo US on the other. Nor are there common officers or directors between Lenovo Global Technology HK Ltd. on the one hand and Lenovo Global Tech on the other. The officers and directors of Lenovo PC HK Limited are listed in the document attached to this declaration as Exhibit D. The officers and directors of Lenovo Global Technology HK Ltd. are listed in the document attached to this declaration as Exhibit E. .

13.     LGL files separate tax returns from Lenovo US and Lenovo Global Tech. LGL files its tax returns in Hong Kong. It is my understanding that Lenovo US and Lenovo Global Tech file their tax returns in the United States.

14.     LGL does not pay for the facilities in the United States. LGL employees do not work out of or utilize any of Lenovo US's or Lenovo Global Tech's facilities in the United States.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in ___Hong Kong___ on this day of July __17th__, 2024

_____ Adrian Chim

# EXHIBIT 2

Case 2:24-cv-00239-JRG   Document 24-2   Filed 07/18/24   Page 2 of 152 PageID #:  1017



HKD COUNTER STOCK CODE 992
RMB COUNTER STOCK CODE 80992

Lenovo Group Limited

2023/24 Environmental, Social and Governance Report

Smarter
technology
for all

Case 2:24-cv-00239-JRG   Document 24-2   Filed 07/18/24   Page 4 of 152 PageID #: 1018

## Table of contents

| | |
|---|---|
| 1.0 Executive letters | 2 |
| A letter from the Chairman and CEO | 4 |
| A letter from our Chief Legal & Corporate Responsibility Officer | 6 |
| 2.0 About this report | 8 |
| About this report | 10 |
| Organizational profile | 11 |
| Material topics | 12 |
| Aligning with the United Nations Sustainable Development Goals | 14 |
| 3.0 Environmental | 16 |
| Environmental management system (EMS) | 18 |
| Climate change | 19 |
| Waste | 25 |
| Water | 26 |
| Environmentally conscious products | 27 |
| Packaging | 37 |
| Product end-of-life management (PELM) | 39 |
| Circular economy | 40 |
| Biodiversity | 41 |
| 4.0 Social | 42 |
| Labor practices | 44 |
| Health and safety | 45 |
| Diversity and inclusion (D&I) | 51 |
| Employment and talent management practices | 57 |
| Global philanthropy and community engagement | 64 |
| 5.0 Governance | 68 |
| ESG governance | 70 |
| Business practices | 73 |
| Product quality management | 79 |
| Innovation | 81 |
| Governance highlights | 83 |
| 6.0 Global supply chain | 86 |
| Supply chain ESG practices | 88 |
| Supplier diversity | 101 |
| 7.0 Consolidated metrics | 102 |
| FY 2023/24 consolidated metrics | 104 |
| 8.0 EMS performance, objectives, and targets | 116 |
| FY 2023/24 EMS performance, objectives, and targets | 118 |
| 9.0 Long-term KPI progress | 126 |
| Long-term ESG key performance indicators (KPI) | 128 |
| 10.0 Appendix | 132 |
| FY 2023/24 memberships and associations | 134 |
| Scope of the report | 135 |
| Gender equity supplementary information | 136 |
| GRI content index | 138 |
| The Hong Kong Stock Exchange's ESG Reporting Guide content index | 143 |

Case 2:24-cv-00239-JRG   Document 24-2   Filed 07/16/24   Page 12 of 152 PageID #:   1037

# 2.0 About this report

10      About this report

11      Organizational profile

12      Material topics

14      Aligning with the United Nations
        Sustainable Development Goals

# 2.0 About this report

## About this report

This is the 18th annual Environmental, Social, and Governance (ESG) Report of Lenovo Group Limited[1] (HKD counter stock code: 992 / RMB counter stock code: 80992) ("the Company"), which covers the Fiscal Year (FY) 2023/24 (April 1, 2023 – March 31, 2024). This report is considered a companion document to the Company's FY 2023/24 Annual Report. The annual ESG update can be found in the Management's discussion & analysis of the Annual Report.

### Report content

The content of this report is guided by the ESG Reporting Guide as set out in Appendix C2 to the Rules Governing the Listing Rules of Securities (Listing Rules) on The Stock Exchange of Hong Kong Limited (the Hong Kong Stock Exchange), the Global Reporting Initiative (GRI) Standards, and the needs of Lenovo's stakeholders. This report has been prepared with reference to the GRI 2021 Standards and in accordance with the ESG Reporting Guide of the Hong Kong Stock Exchange. The GRI content index and the Hong Kong Stock Exchange's ESG Reporting Guide content index are included in the Appendix of this report. The Company has complied with all mandatory disclosure requirements and "comply or explain" provisions, including following the reporting principles, as set out in the ESG Reporting Guide of the Hong Kong Stock Exchange.

The Company adheres to the following reporting principles in preparing the report:

Materiality – The Company conducts regular materiality assessments and stakeholder engagement to identify and report on material ESG issues to investors and other stakeholders.

Quantitative – The Company, where appropriate, sets targets with the aim to reduce its impacts and to evaluate and validate its efforts in a measurable manner.

Balance – The Company aims to present information in a transparent and unbiased manner to provide a holistic view of its overall ESG performance.

Consistency – The Company aims to use consistent methodologies to allow for meaningful comparisons of ESG data over time and provide information where there are significant changes.

### External assurance

Accredited third parties have provided verification services for certain energy, greenhouse gas (GHG) emissions, waste, and water data in this report. Please see the Environmental section of this report for more details.

### Scope of this report

For purposes of this report, unless the context otherwise requires, the terms "Lenovo" or "Lenovo Group" or the "Group" refers to Lenovo Group Limited together with its subsidiaries. The contents of this report apply to the Company, together with its principal Lenovo-branded and Motorola-branded subsidiaries (the Covered Entities), except where noted. Where certain topics also include other principal subsidiaries, it is noted. The scope of the Covered Entities' material topics and the boundaries within their value chain are detailed in the table included in the Appendix of this report. The table also includes the scope of coverage for the information that extends to subsidiaries directly or indirectly held by the Company and that are identified in the FY 2023/24 Annual Report. All disclosures and results are for the Company's progress in FY 2023/24 unless otherwise noted. The scope of this report was determined using a financial threshold with reference to the contributions of the subsidiaries or operations to the total revenue of the Group.

### Basis of calculations

All financial data is denoted in US Dollars. The Company may in some instances face various challenges when measuring its performance. If there are contingencies associated with the data provided, those contingencies will be noted in the documentation.

### Contact information

For questions or other information about this report, please contact:

Ms. Jeannie Kwong, ESG Reporting Manager
8001 Development Drive, Morrisville, NC 27560
Email: environment@lenovo.com

---

[1]   *Lenovo Group Limited is the ultimate holding company of Lenovo Group. As a holding company, it does not design, develop, manufacture, or distribute products or services, or control any activities of the Company's subsidiaries in the design, development, manufacture, or distribution of products or services.*

**Appx50**

# Organizational profile

Lenovo is a global technology powerhouse employing approximately 69,500 people around the world and serving millions of customers every day in 180 markets. The Company is incorporated and listed in Hong Kong SAR, China, with headquarters in Beijing, China, and North Carolina, USA. Focused on a bold vision to deliver smarter technology for all, Lenovo has built on its success as the world's largest PC company by further expanding into key growth areas that fuel the advancement of 'New IT' technologies (client, edge, cloud, network, and intelligence) including server, storage, mobile, software, solutions, and services.

Lenovo acquired IBM's PC Division in May 2005. In January 2011, the Company announced a joint venture with NEC Corporation, which resulted in the creation of the largest PC group in Japan. Lenovo has held a majority stake in Medion AG since July 2011, and in October 2014, Lenovo acquired both Motorola Mobility and IBM's X86 servers. In November 2017, Lenovo launched a joint venture with Fujitsu Limited. In 2022, the Company announced a strategic partnership with PCCW Limited to form a technology solutions powerhouse, leveraging the combined strengths of both companies.

Lenovo has a flexible, resilient global supply chain that was ranked #8 in Gartner's Top 25 Global Supply Chains in 2023. To meet the demands of its diverse, global customer base, Lenovo has established company locations, research centers, and manufacturing sites around the world.



**Global supply chain profile**

| | | | |
|---|---|---|---|
| **180** Markets | **1B+** Global customers | **30+** Global manufacturing sites | **#8** Gartner 2023 Global Supply Chain Top 25 (up 1 place) |
| **10M+** Order lines per year | **120M+** Shipments | **2,000+** Suppliers | **>$150M** Digital transformation investment |

**Appx51**

# Material topics

Lenovo recognizes the importance of understanding a variety of informed perspectives as it develops and drives its ESG programs. Through ongoing engagement with stakeholders, the Company identifies ESG-related material topics through a process that includes a range of inputs which align with its significant environmental, social, and governance impacts; or that substantively influence the decisions of stakeholders. The sources of input include but are not limited to customer surveys, benchmarking of industry trends, ESG reporting frameworks, investor outreach, requirements under the Listing Rules, regulatory agencies, non-governmental organizations (NGOs), and various internal and external stakeholders.

The ESG-related material topics are identified and prioritized by considering the degree of importance of each topic related to:

- Lenovo's business continuity
- Lenovo's stakeholders
- Lenovo's impact on the economy, environment, and people, including human rights

This prioritization exercise is carried out using stakeholder inclusiveness and materiality principles. The information derived from this process helps set the Group's ESG goals, targets, disclosure practices, and ongoing engagement with its stakeholders. The material topics identified for the FY 2023/24 reporting year are detailed in the chart below.

The Board of Directors and the ESG Executive Oversight Committee (ESG EOC) of the Company have reviewed and approved the materiality assessment process and results, ensuring that there is alignment with the Group's policies, business strategies, and risk priorities. Details regarding the Company's ESG Governance and the role of the ESG EOC are included in the Governance section of this report.



## Environmental

Climate change
Energy management
Product end-of-life management
Product energy efficiency and carbon footprint
Product materials
Product packaging
Product repairability
Supply chain management - environmental
Transportation and distribution
Waste management
Water management



## Social

Community engagement
Ethical Artificial Intelligence (AI)[2]
Human rights
Health and safety
Diversity and inclusion
Labor practices
Philanthropy



## Governance

Cyber security and data privacy
Ethics and integrity
Innovation
Product quality and safety
Regulatory compliance
Reporting and disclosures
Stakeholder engagement

[2] This topic was initially identified as a social matter during the Company's materiality assessment but as the importance of AI has grown, the impacts are being managed through the Company's governance practices. As a result, this topic is discussed in the Governance section.

## Stakeholder engagement

The Group actively manages its relationships with customers, employees, suppliers, investors, regulators, members of the communities in which it operates, and other stakeholders who may be impacted by the organization's ESG performance and whose actions can affect the organization's value. Direct and indirect stakeholder engagement is conducted through regular business practices or through interactions with relevant stakeholders.

**Appx52**

Case 2:24-cv-00239-JRG   Document 24-2   Filed 07/18/24   Page 152 of 152 PageID #:  1167



www.lenovo.com

Appx53

# EXHIBIT

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|-----------|----------|-----------|------|-----------|--------|----------|
| | Director | 30/01/2013 | BROWN, William Tudor | | | |
| | Director | 17/05/2005 | GRABE, William Otto | | | |
| | Director | 18/09/2015 | ORR, Gordon Robert Halyburton | | | |
| | Director | 23/02/2024 | ROERSTED, Kasper Bo | | | |
| | Director | 18/08/2023 | THORNTON, John Lawson | | | |
| | Director | 20/06/2022 | WANG, Hsiueh Hong Cher | | | |
| | Director | 22/02/2019 | WOO, Chin Wan Raymond | | | |
| | Director | 20/06/2022 | XUE, Lan | | | |
| | Director | 15/05/2020 | YANG, Lan | | | |
| | Director | 16/12/1997 | YANG, Yuanqing | | | |
| | Director | 03/11/2011 | ZHAO, John Huan | | | |
| | Director | 30/04/2005 | ZHU, Linan | | | |
| | Secretary | 01/12/2022 | Lam, Ngan Ling | | | |

**Appx55**

# EXHIBIT B

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|---|---|---|---|---|---|---|
| | Chairman | 17/12/2021 | Cranor, Kurt | | | |
| | Director | 23/06/2011 | Cranor, Kurt | | | |
| | Director | 29/12/2023 | Johnson, Kim | | | |
| | Director | 31/05/2007 | Stanley, John P. | | | |
| | Executive Vice President | 20/06/2019 | Stanley, John P. | | | |
| | Controller | 17/12/2021 | Cranor, Kurt | | | |
| | Secretary | 20/06/2019 | Stanley, John P. | | | |
| | President | 01/12/2013 | Cranor, Kurt | | | |
| | Treasurer | 01/12/2013 | Cranor, Kurt | | | |

# EXHIBIT

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|---|---|---|---|---|---|---|
| | Chairman | 16/12/2021 | Skaugen, Kirk Borgeir | | | |
| | Director | 31/01/2019 | Fisher, Douglas William | | | |
| | Director | 29/12/2023 | Leary, Stephen C. | | | |
| | Director | 17/12/2016 | Tigges, Linda | | | |
| | Executive Vice President | 04/10/2017 | Tigges, Linda | | | |
| | Controller | 29/12/2023 | Leary, Stephen C. | | | |
| | President | 04/10/2017 | Skaugen, Kirk Borgeir | | | |
| | Secretary | 04/10/2017 | Tigges, Linda | | | |
| | Treasurer | 29/12/2023 | Leary, Stephen C. | | | |

**Appx59**

# EXHIBIT

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|---|---|---|---|---|---|---|
| | Director | 31/01/2010 | Leung, Sze Leung Patrick | | | |
| | Director | 31/03/2024 | LO, Shing Cheuk | | | |
| | Director | 23/10/2007 | Wong, Wai Kwong | | | |
| | Director | 06/09/2007 | Wong, Wai Ming | | | |
| | Secretary | 01/12/2022 | Lam, Ngan Ling | | | |

**Appx61**

# EXHIBIT E

# Current Appointments

| Job Title | Position | Appointed | Name | Appt.Grp. | Status | Reminder |
|-----------|----------|-----------|------|-----------|--------|----------|
| | Director | 07/09/2016 | Leung, Sze Leung Patrick | | | |
| | Director | 31/03/2024 | LO, Shing Cheuk | | | |
| | Director | 07/09/2016 | Wong, Wai Kwong | | | |
| | Director | 06/07/2016 | Wong, Wai Ming | | | |
| | Secretary | 01/12/2022 | Lam, Ngan Ling | | | |

**Appx63**

# EXHIBIT 1



# D&B Business Directory

# Lenovo (Beijing) Limited

## Overview

---

**Company Description:** 🔒

**Key Principal:** Yan Zhou

**Industry:** Computer and Peripheral Equipment Manufacturing , Professional and Commercial Equipment and Supplies Merchant Wholesalers , Computer and Electronic Product Manufacturing , Manufacturing , Electronic computers , Computer peripheral equipment, nec Computers, peripherals, and software

**See other industries within the Manufacturing sector:** Aerospace Product and Parts Manufacturing , Agriculture, Construction, and Mining Machinery Manufacturing , Alumina and Aluminum Production and Processing , Animal Food Manufacturing , Animal Slaughtering and Processing , Apparel Accessories and Other Apparel Manufacturing , Apparel Knitting Mills , Architectural and Structural Metals Manufacturing

**Popular Search:**





 



 

Privacy · Terms

Case 2:24-cv-00225-JRG   Document 47-1   Filed 12/10/2024   PageID #: 1453

**Address:** Room 201-H2-6, 2nd Floor, Building 2, No. 6 Shangdi West Road, Haidian District Beijing, Beijing, 100085 China

**Website:** www.lenovo.com.cn

**Employees (this site):** 🔒   ⓘ Actual

**Year Started:** 🔒 | **Incorporated:** 🔒

**ESG ranking:** 🔒 ⓘ

**ESG industry average:** 🔒 ⓘ

What is D&B's ESG Ranking?

Is this your business? Contact us to understand how D&B calculated your company's specific ESG Ranking, provide new or updated information to ensure your company's ESG Ranking remains accurate and up to date, or dispute your current ranking.

Unlock full sales materials and reports

# Contacts

Get in Touch with 3 Principals*

| Yan Zhou | Contact 2 | Contact 3 |
|---|---|---|
| Supervisor | 🔒 | 🔒 |



**Appx66**

8/6/24, 3:26 PM    Lenovo (Beijing) Limited Company Profile | Beijing, Beijing, China | Competitors, Financials & Contacts - Dun & Bradstreet

Case 2:24-cv-00825-JRG    Document 47-1    Filed 12/10/2024    PageID #: 1454



# Corporate Family



### Unlock more company and contact details with your D&B Hoovers Free Trial

Find and prioritize your best prospects, boost your sales productivity, and win more deals with D&B Hoovers.

Get a D&B Hoovers Free Trial

If Lenovo (Beijing) Limited is your company and you would like to remove it from the D&B Business Directory, please contact us.



# EXHIBIT



# Lenovo (United States) Inc.



# Overview

**Doing Business As:** Lenovo International

**Company Description:** 🔒

**Key Principal:** Yang Yuanqing



**Industry:** Computer and Peripheral Equipment Manufacturing , Computer Systems Design and Related Services , Computer and Electronic Product Manufacturing , Manufacturing , Electronic computers

Computer software development and applications

**See other industries within the Manufacturing sector:** Aerospace Product and Parts Manufacturing , Agriculture, Construction, and Mining Machinery Manufacturing , Alumina and Aluminum Production and Processing , Animal Food Manufacturing , Animal Slaughtering and Processing , Apparel Accessories and Other Apparel Manufacturing , Apparel Knitting Mills , Architectural and Structural Metals Manufacturing

**Popular Search:**

🏢 Computer and Peripheral Equipment Manufacturing    🏢 Computer Systems Design and Related Services

🏢 Computer and Electronic Product Manufacturing    🏢 Manufacturing

**Address:** 8001 Development Dr Morrisville, NC, 27560-7416 United States

**Phone:** 🔒

**Website:** www.lenovo.com

**Employees (this site):** 🔒    ⓘ Actual

**Employees (all sites):** 🔒    ⓘ Actual

**Revenue:** 🔒    ⓘ Modelled

**Year Started:** 🔒  |  **Incorporated:** 🔒

**ESG ranking:** 🔒  ⓘ

**ESG industry average:** 🔒  ⓘ

What is D&B's ESG Ranking?

Is this your business? Contact us to understand how D&B calculated your company's specific ESG Ranking, provide new or updated information to ensure your company's ESG Ranking remains accurate and up to date, or dispute your current ranking.

Appx70

Case 2:24-cv-00825-JRG    Document 47-2    Filed 12/19/2024    PageID #: 1458

Unlock full sales materials and reports

# Contacts

Get in Touch with 5 Principals* and 2,934 Contacts

| | | |
|---|---|---|
| **Yang Yuanqing**<br>Chief Executive Officer | **Contact 2** 🔒 | **Contact 3** 🔒 |
| **Contact 4** 🔒 | | |



**Appx71**



# Financial Data



Dun & Bradstreet collects private company financials for more than 23 million companies worldwide. Find out more.

 🔓 Get a D&B credit report on this company  ›

 🔒 Unlock more company details by getting detailed credit reports on other companies or your own.

**Buy Credit Reports**



# Similar Companies Nearby



## Unlock more company and contact details with your D&B Hoovers Free Trial

Find and prioritize your best prospects, boost your sales productivity, and win more deals with D&B Hoovers.

Get a D&B Hoovers Free Trial

# Corporate Family



## Unlock more company and contact details with your D&B Hoovers Free Trial

Find and prioritize your best prospects, boost your sales productivity, and win more deals with D&B Hoovers.

Get a D&B Hoovers Free Trial

If Lenovo (United States) Inc. is your company and you would like to remove it from the D&B Business Directory, please contact us.

